JANE G. TORREY V. WM. CAMERON ET AL.

No. 6254.

1.  **Husband and Wife—Debtor and Creditor.**—When the wife advances money to the husband to enable him to meet a payment for land already negotiated for and purchased in his own name, as between the husband and wife the relation of debtor and creditor is thereby created to the extent of the advances made, and not that of trustee and *cestui que trust.*

2.  **Evidence.**—In a suit involving the rights of the wife asserted to property against the husband's creditors, a written statement by the husband showing his investment of the wife's separate means in the property while he was acting as her agent is inadmissible to show the wife's interest. His written statement made shortly before a conveyance of his interest in community property to his wife, showing a valuation greatly larger than the consideration expressed in the deed to the wife, is admissible on an issue involving fraud in his conveyance, when the object is thereby to contradict his testimony as to value.

3.  **Fraud—Husband and Wife.**—A husband in failing circumstances may make a valid conveyance of property to his wife in part satisfaction of a debt he owes her, but if the value of the property conveyed largely exceeds the consideration expressed in his deed, the deed is void as to other creditors, though a large indebtedness from the husband to the wife may remain unsatisfied.

4.  **Separate Property of Wife.**—The wife's claim of separate right in property conveyed by another to her husband, when based on the investment by the husband for her benefit of her separate means in the property purchased, may be established by evidence sufficient to produce belief in the minds of the jury that the wife's separate means traced through their various mutations paid for the property. It is not necessary that the evidence tracing her separate means should be so overwhelming as to amount to absolute certainty.

5.  **Evidence.**—In a suit involving the claim of the wife to property as her own separate estate, which she alleged accrued to her under the laws of another State where she resided when the right vested, if the laws of such State which determine the character and extent of the rights claimed by her be in evidence their effect upon the estate claimed should be given in charge to the jury. A charge which instructs the jury as to the laws of Texas alone governing the separate estate of the wife would in such case be error.

ON MOTION FOR REHEARING.

6.  **Decree.**—When the meaning of a decree from its terms is involved in doubt it must be construed in the light of its recitals.

APPEAL from Taylor. Tried below before Hon. William Kennedy.

In addition to the statement of the case contained in the opinion, it may be added that the plaintiff having alleged that the money with which the property in controversy had been bought had accrued to her from a separate estate she owned in Pensylvania, the law of Pennsylvania relating to the estates of married women was introduced, and was as follows:

"That every species and description of property, whether real, personal, or mixed, which may be owned by or belong to any single woman shall continue to be the property of such woman as fully after the marriage as before, and all property of whatever name or kind which shall accrue to any married woman during coverture, by will, descent, deed of convey-

ance, or otherwise, shall be owned, used, and enjoyed by such married woman as her own separate property, and the said property whether owned by her before marriage or which shall accrue to her afterwards shall not to be subject to levy and execution for the debts or liabilities of her husband, nor shall such property be sold, conveyed, mortgaged, transferred, or in any manner encumbered by her husband without her written consent first had and obtained and duly acknowledged before one of the judges of the Court of Common Pleas of this commonwealth that such consent was not the result of coercion on the part of her said husband, but that the same was voluntarily given and of her own free will and accord: Provided, that her said husband shall not be liable for the debts of the wife contracted before marriage: Provided, that nothing in this act shall be construed to protect the property of any such married woman from liability for debts contracted by herself or in her name by any person authorized to do so, or from levy and execution on any judgment that may be recovered against a husband for the torts of the wife, and in such cases execution shall be first had against the property of the wife."

The qualification to the special charge made the rights of appellant depend upon whether or not the indebtedness of Torrey was for the separate property of the appellant as defined in the first subdivision of the general charge of the court. In that subdivision the court ignored the law of Pennsylvania.

*Bently & Bowyer*, for appellant. — 1. A statement of account made by an agent to his principal is original evidence.

2. The declarations of Torrey perhaps would bind him under some circumstances, but his declarations as to values would certainly not operate against Mrs. Torrey in this suit. The declarations of one joint owner not in the presence or by the authority of his co-owner can not operate against the rights of such co-owner. Bagley v. Bermingham, 23 Texas, 452; McKay v. Treadwell, 8 Texas, 178; Harriet E. Smith v. Redden, Posey's U. C.; Tucker v. Carr, 39 Texas, 98; Whart. on Ev., sec. 1215; Danebal v. Brown et al., 4 Conn., 483, 492; Greenl. on Ev., sec. 176.

3. A failing debtor can convey property to his creditor, provided he conveys no more than is reasonably sufficient to pay the debt. Edrington v. Rogers, 15 Texas, 188; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Schneider & Davis v. Sansom, 62 Texas, 203; Traylor v. Townsend, 61 Texas, 144; 2 W. & W. Ct. App. C. C., secs. 506, 507, 731; 1 W. & W. Ct. App. C. C., sec. 453; Cox v. Miller, 54 Texas, 16; McKamey v. Thorp, 61 Texas, 648; Parker v. Coop, 60 Texas, 111; Bonner v. Stephens, 60 Texas, 619; Lewy v. Fischl, 65 Texas, 311.

4. A married woman under the laws of this State holds as her separate estate all property, real, personal, or mixed, acquired before marriage and all acquired after marriage by gift, devise, or descent, or which

she purchases after marriage with funds arising from her separate estate. Under the laws of Pennsylvania a married woman owns as her separate estate all property acquired by gift, devise, or descent, and all property accruing by deed of conveyance or otherwise; and as to property belonging to her as her separate estate in Pennsylvania, the presumption that all property conveyed to husband or wife during coverture is community property does not apply and it was misleading to give it in charge to the jury. Andrews v. Hoxie, 5 Texas, 171; Willard v. Conduit, 10 Texas, 213; 1 Greenl. on Ev., sec. 486; Story on Conf. Laws, sec. 638; Ferguson v. Clifford, 37 N. H., 86; Bank v. Barry, 25 Md., 287, 295; Livingston v. M. M. Co., 6 Cranch, 280.

5. The law of Pennsylvania was in evidence and a charge thereon was required.

6. The law of Pennsylvania does not create the presumption that property acquired during marriage is community property; on the contrary, property conveyed to a married woman under the laws of Pennsylvania is her separate property. The property the proceeds of which were invested in the Simpson purchase was purchased during coverture, and that part of the charge objected to ought to have had some relation to the law of Pennsylvania.

7. It is error to charge in any civil case that any fact must be established by " clear and conclusive" proof or repelled by such character of proof, or that the rights of a married woman should be clearly and indisputably established. Sparks v. Dawson, 47 Texas, 138; Markham v. Caruthers, 47 Texas, 28; Cuney v. Dupree, 21 Texas, 218; King v. Gilleland, 60 Texas, 274. Clear and satisfactory evidence meets the rule.

8. The law of Pennsylvania being in evidence the court ought to have given it in charge when it was alleged that the appellant's separate estate accrued to her under said law of Pennsylvania, and it was in proof that it did so accrue.

*Spoonts & Legett,* for appellees. — 1. If the indebtedness which appellant claimed to be due her by her husband was for community property, then it was not a valid indebtedness and would not support a transfer of property to her by her husband, but said property would still remain subject to the debts of her husband. Pearce v. Jackson, 61 Texas, 643; Green v. Ferguson, 62 Texas, 525; De Blane v. Lynch, 23 Texas, 27; Heidenheimer v. McKeen, 63 Texas, 229; Ezell v. Dodson, 60 Texas, 331; Rev. Stats., art. 2852.

2. The charge of the court complained of was not erroneous, but borne out and sustained by a long line of authorities in this State. Counsel contend that the law of Pennsylvania does not create the presumption of community property. We have no means of knowing such fact, as it is scarcely to be presumed that the statute of Pennsylvania in evidence

contains all the laws of said State on the subject of the property rights of married people.   The law of Pennsylvania is presumed to be the same as the law of Texas.   King v. Gilleland, 60 Texas, 272; Love v. Robertson, 7 Texas, 6; Schmeltz v. Garey, 49 Texas, 49; Chapman v. Allen, 15 Texas, 283; Mitchell v. Marr, 26 Texas, 329; 1 Perry on Trusts, sec. 136; Conner v. Hawkins, 66 Texas, 639; Seitz v. Mitchell, 44 U. S., 582; Goodyear v. Rambaugh, 13 Pa., 480; Stewart on Husb. and Wife, 179.

3.   A married woman can not contract a valid indebtedness in the purchase of real estate unless it be necessary as a homestead, and a debt thus contracted is an investment of her husband's credit, and makes the property thus acquired community property.   Epperson v. Jones, 65 Texas, 425; Heidenheimer v. McKeen, 63 Texas, 229.

4.   If the appellant desired a charge on the laws of Pennsylvania he should have requested it.   Frank v. Hancock, Posey's U. C., 564; Hall v. O'Malley, 49 Texas, 70; Robinson v. Varnel, 16 Texas, 382; Ford v. McBryde, 45 Texas, 499; Powell v. Haley, 28 Texas, 52; Peeler v. Guilkey, 27 Texas, 355; Berry v. Donley, 26 Texas, 737; Metzger v. Wendler, 35 Texas, 367.

GAINES, ASSOCIATE JUSTICE.—The appellant Jane G. Torrey, joined by her husband William Torrey, brought this suit to enjoin the sale under executions of certain lands in Taylor, Jones, and Nolan counties, and of certain lots in the town of Abilene, upon the ground that they were her separate property.   The lands had been attached as the property of William Torrey in two suits brought by William Cameron & Co. and the Denton Mills and Elevator Company respectively against the firm of Torrey, Davidson & Grasscup, of which William Torrey was a member. In these two suits judgments were rendered for the plaintiffs and executions were issued directing a sale of the attached property to satisfy the judgments.   It was to enjoin these sales that the present suit was brought. The trial in the lower court resulted in a verdict in favor of defendants and judgment dissolving the injunction as to all the property described in the petition except certain lots claimed as the homestead of plaintiffs, as to which it was perpetuated.   A motion for a new trial having been filed, defendants appeared in open court and asked that the judgment be made perpetual except as to an undivided half interest in certain lots named by them, and the whole of certain other lots and two quarter sections of Blind Asylum lands—all lying in Taylor County.   The judgment was amended in accordance with this request and the motion for a new trial was overruled.

The property as to which the injunction was perpetuated was that which was conveyed to Mrs. Torrey by her husband by two deeds dated respectively November 15 and December 24, 1884, and consists of an undivided half interest in fifty-seven lots and parts of lots, the whole of six lots,

all in the town of Abilene, and the two quarter sections of land above
named.    All of this property except the six lots last mentioned and one
of the quarter sections of the Blind Asylum lands was originally con-
veyed to William Torrey by John N. Simpson by deed dated June 1, 1883.
Subsequent to this deed to Torrey, and before he conveyed to his wife, he
conveyed an undivided half interest in such of the lots and land as were
conveyed to him by Simpson and are involved in this controversy to one
Huston.    Huston on the 29th of December, 1884, conveyed his interest
to Mrs. Torrey.

The effect of the verdict of the jury was to establish the invalidity of
all of the conveyances to Mrs. Torrey of this property, but since the in-
junction has been dissolved as to an undivided half interest in the prop-
erty the judgment should be permitted to stand, provided it appears that
there is no error in the proceedings of the court below which affected
the question of her right to an injunction as to either half—that is to say,
either as to the half interest derived from her husband or to that con-
veyed from Huston.

Appellees contend that the conveyances to Mrs. Torrey by her hus-
band were fraudulent as to her husband's creditors, and that the errors
assigned to the rulings of the court upon this branch of the case are not
well taken.    But appellants claimed title to the half interest conveyed
by the husband to the wife not alone through that conveyance.    They
alleged and attempted to prove that the property when purchased from
Simpson was paid for with money of the separate estate of the wife, and
that a resulting trust was created in her favor.    The testimony to estab-
lish the trust was given by the husband himself.    It is as follows:  "In
February, 1883, Mr. B. F. Huston and I bought the Jno. N. Simpson
interest in Abilene, specified in the deed of June 1, 1883, on the follow-
ing terms, to-wit:   I was to furnish the money to buy the property and
Mr. Huston was to make the trade and manage the property and make
sale of the same, and when the proceeds of the sale were sufficient to
pay me back all the money I was out with interest on it Mr. Huston and
I were to divide the remainder equally.    The deed to the property was
to be taken in my name.    This trade was made with Mr. Simpson in
February, 1883, but the deed was not made until June 1, 1883, at which
time I finished paying the purchase money.    The price I paid for the
property was $5800 and was paid as follows:   I paid $1000 cash at the
time of the trade in February, 1883, of my own money, which I had
on deposit at the bank at Abilene.    I wrote to my wife, who was in Phil-
adelphia at the time of the trade, and told her what I had done and re-
quested her to protect some drafts that I had made on a Mr. Strong, a
friend of my [sic].

"At the time my wife owned a cottage at Atlantic City, and she bor-
rowed $1000 from Mr. Strong on said cottage and raised about $600,

probably $650, by the sale of some bonds, and with the money thus raised protected my drafts, and then had $1600 or $1650 vested in the Simpson property. The balance of the purchase money for said property was paid for out of the money received from the sale of the property."

It thus appears that when the trade was made Torrey made it in his own name and for himself and Huston; that he paid $1000 of his own money and drew drafts for $1650, which he requested his wife by letter to pay, informing her at the same time of the transaction that he had made. The wife paid the drafts. This is clearly not a case in which the wife entrusts money to her husband for investment for her own benefit or for safe keeping and he purchases property with it in his own name. Here the property was purchased before she paid the money, and she knew the purpose of the drafts was to make or cover a payment upon property which the husband had already purchased on his own account. The payment of the money at the request of the husband was a loan by the wife to him. It created the relation of debtor and creditor, and not that of trustee and *cestui que trust.*

There was no other testimony bearing upon this question which was entitled to consideration. Two depositions of Mrs. Torrey were taken at the instance of the plaintiffs. In the first she testified that she knew but little of the details of the business between herself and her husband; that he always acted for her in business transactions, and that she could not testify as to the details of the business. In the second she testified that since her former depositions he had furnished her with statements as to the investment of her moneys, and attached the statements to her depositions. Those statements were offered in evidence and were excluded by the court upon objection by the defendants. There was no error in excluding those statements. That the husband could not make evidence for the wife after suit brought by furnishing her a statement of the transactions between them, is quite too clear for discussion. It is necessary to say no more in order to dispose of the appellants' first three assignments of error. The depositions of Mrs. Torrey show that she had no particular knowledge of the transactions by which the property in controversy was acquired except that derived from information of the husband after the litigation was begun. His knowledge has already been shown by the quotation from his own testimony.

It follows from what we have said that at the time Torrey conveyed the property bought of Simpson to his wife it was community property, and subject to the payment of his debts. There was no evidence which authorized any other conclusion. With reference to this property, we may therefore disregard all the assignments which question the correctness of the charge of the court in regard to the trust alleged to have resulted to her from that purchase.

On 24th of October, 1884, William Torrey furnished a statement of

the assets of his firm, and of his individual assets, to William Cameron & Company, in which he rendered the property subsequently conveyed to Mrs. Torrey at a valuation largely in excess of the consideration expressed in the deeds made by him to her. While upon the stand he was cross-examined as to this statement and admitted that he made it, but stated that it was received with the understanding that it was not the cash value of the property but as its prospective value. He also testified as to the valuation of the property as set down in the statement.

Evans, the cashier of William Cameron & Co., to whom the statement was delivered, testified that when it was made he asked Torrey if the value of the real property was not too high, and that he replied that he thought not; that he had endeavored to put a fair cash valuation on the same, and had valued it in the statement at less than he would take for it. The court at the instance of defendants admitted the statement as to the values of the real estate, over the objection of plaintiffs, and this ruling is assigned as error. The bill of exceptions shows that the court admitted it as tending to impeach the testimony of William Torrey.

We think the written statement showing unequivocally the values placed upon the property by Torrey at a time when it was community property under his control and before his conveyance to the wife, tended in some degree to throw discredit upon his testimony that the value of the property was in fact greatly less than that shown by the writing, and tended to support the testimony of Evans as to that matter and was therefore admissible. But if the witness had fully admitted its execution and contents the writing could have added nothing to his testimony in that particular, and therefore we do not see that its admission could have operated to the prejudice of appellants. If the plaintiffs desired a charge limiting the effect of the evidence they should have asked for it.

There was evidence tending to show that the value of the property conveyed to Mrs. Torrey by her husband was largely in excess of the consideration expressed in the deed, and also that at the time of the conveyances he was indebted to her in an amount also greatly exceeding such consideration. The judge in his general charge instructed the jury in effect that the law permitted a husband who was indebted to his wife, though insolvent, to convey to her property in satisfaction of his indebtedness to her, provided no more was conveyed than was reasonably required to pay such debt, although the effect of such transfer was to hinder and delay other creditors, but also added the following:

"But if on the other hand you find that Wm. Torrey, being indebted to his wife in a large amount, agreed to convey and did convey to his wife the lands and lots mentioned in the petition in satisfaction of a portion of said indebtedness, and if you further find that more property was conveyed to her than was reasonably required to discharge the portion of indebtedness so agreed upon, you will return a verdict for defendants as to

to the lands and lots so conveyed, as the conveyance would be void in law."

The following instruction requested by plaintiffs was refused:

"If at the time Wm. Torrey conveyed certain properties in dispute in this cause to Jane G. Torrey, viz., on November 15, 1884, and December 24, 1884, he was indebted to her on account of her separate estate in a sum in excess of the real value of said property, she got a good title to said property."

In the action of the court in regard to these instructions we think there was no error. If Torrey was indebted to his wife he had the right to convey to her property in satisfaction of a part of his indebtedness, provided that the value of the property conveyed did not exceed the amount so satisfied. But if the value of the property largely exceeded the consideration expressed in the deeds, we are of opinion that the conveyance was void as to creditors, although a large indebtedness may have remained unsatisfied. The same rule applies between the husband and wife as between any other persons holding to each other the relation of debtor and creditor. The amount of the credit and the value of the property must be approximately equal. Where, as in this case, the husband has been entrusted with complete control of the wife's business, including his indebtedness to and transactions directly with her, and upon the eve of failure transfers to her property in satisfaction of a part only of such indebtedness which exceeds in value the amount so satisfied, the conveyance can not be sustained. That there is a large amount still unsatisfied, more than sufficient to cover the excess in the value of the property, can not affect the question in her favor. It is but an additional evidence of fraud. A wife who leaves such a transaction wholly to her husband can not be permitted to set up her ignorance of the facts in order to support its validity.

The assignment that the court erred in charging the jury that the value of the property is "what it would sell for cash in the ordinary course of trade in the manner in which property is ordinarily sold in this market," is not well taken. The objection that the charge confined the valuation to the market of Taylor County, in which the cause was tried, seems to us hypercritical. It was not calculated to mislead.

We think the verdict as to the property originally bought of Simpson and subsequently conveyed by Torrey to his wife well supported by the evidence, and that in the judgment as to that property there is no error. There were six lots and one quarter section of land which were held subject to execution by the judgment that were not purchased of Simpson. This quarter section, Torrey testified, was bought of C. W. Merchant, and that he thought he paid his own money for it. There was no resulting trust in this, nor was there in lot 1 in block 131. Torrey testified that he traded a horse and wagon for this lot, but that his wife subsequently paid off a lien existing upon it at the time of the purchase. There is no

error in the judgment as to the land bought of Merchant or as to the lot last named. The same may be said of lot 2 in block 23, and lot 4 in block 25. We find no mention of them in the testimony except in the deeds from Torrey to his wife. The presumption is they were community property at the time of these conveyances.

But Torrey testified that lot 23 in block 7 and lot 2 in block 8 were paid for with his wife's money, and also that he drew upon his wife's funds to pay for lot 24 in block 7 and took the deed in his own name for the purpose of convenience in disposing of it with her consent. This evidence tended to show clearly a trust. The court correctly charged the law of resulting trusts except as to the degree of proof required in tracing the wife's separate estate. Upon this point the following instruction was given: "When separate property has undergone mutations and changes it is indispensable to maintain its separate character that it be clearly and indisputably traced and identified."

We think this was error. We do not doubt that the trust property or fund must be clearly traced—that is to say, where there have been successive transfers each link in the chain of transfers through which it is sought to establish the trust must be distinctly pointed out. It is not sufficient by proof of circumstances to raise a strong presumption that in some way not clearly shown the wife's separate estate has passed into the property in which the trust is sought to be established. But when the train of transfer has been clearly shown we do not think that the consideration of each conveyance need be indisputably proved.

The evidence should be sufficient to produce belief in the minds of the jury that the property has been distinctly traced through all its mutations, but it need not place the question beyond dispute. The learned judge who tried the case below was probably misled by expressions found in the opinions of this court in which this question has been discussed. What may be a correct rule of evidence as announced in an opinion may not always be proper to give to a jury, though we do not mean to imply that the rule as stated in the charge was even abstractly correct.

We think it would have been proper for the court to have charged the jury as to the effect of the law of Pennsylvania, which was introduced in evidence. To charge only our own law as to the separate property of married women, without a qualification as to the law of Pennsylvania, where the plaintiffs resided before their immigration, was under the facts of this case calculated to mislead the jury.

The errors pointed out affect only the judgment as to lot 2 in block 8, and lots 23 and 24 in block 7. If appellees see proper they may remit the judgment as to them, in which event the judgment will be affirmed. Otherwise it will be reversed and remanded.

*Reversed and remanded.*

Delivered April 26, 1889.

### ON MOTION FOR REHEARING.

GAINES, ASSOCIATE JUSTICE.—We are of opinion that this motion. should be overruled. All the questions presented by appellants' brief in so far as they affect the property in controversy as to which their injunction was dissolved, we think were fully considered before disposing of. the case in the former opinion. Such assignments as were not considered raised questions, as we thought and still think, which were eliminated by the appellees remittiturs in the lower court and in this court.

It is urged, however, in this motion that the judgment is erroneous in. so far as it dissolves the injunction as to all of lot 6 in block 26 in Abiline, and that under the rulings in ,the former opinion the injunction should have been dissolved as to only one-half of that lot. We think appellants misconstrue the final decree of the court below. But for the remittitur which is recited in that decree it may be doubtful whether it. was intended to dissolve the injunction as to the whole or half of the lot.

The language admits of both constructions. But the recitals show that: by the remittitur the appellees asked the court to dissolve the injunction. as to one-half of lot 6. The decree being doubtful should be considered in the light of its recitals. So considered, we hold that the injunction was not dissolved as to the whole of the lot in question. We deem the expression of this opinion sufficient to settle all question as to the title of that lot as fixed by the decree and to prevent any litigation in the matter. in any future proceeding.

The motion is overruled.

*Motion overruled.*