CITIZENS' NAT. BANK OF PLAINVIEW
et al. v. SLATON et al.   (No. 1055.)

(Court of Civil Appeals of Texas.   Amarillo.
Nov. 1, 1916.   Rehearing Denied
Nov. 29, 1916.)

1. EVIDENCE ⊂∞142(2) — VALUE OF LAND —
OTHER LANDS.
As evidence of the value of land, the court properly excluded testimony as to sales of lands and the prices therefor in the same district as the land in controversy, where the witness stated that in his opinion other plains lands in the region were worth a "right smart" more, while the lands the witness knew about having been sold were from seven to nine miles from the land in controversy, and, unlike such land, which had a 40-acre lake on it, were unimproved.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 418, 421; Dec. Dig. ⊂∞142(2).]

2. APPEAL AND ERROR ⊂∞662(3)—QUALIFICATION OF BILL OF EXCEPTIONS — ACCEPTANCE.
The facts stated in the trial court's qualification to a bill of exceptions to the exclusion of testimony must be taken by the Court of Civil Appeals as correct.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2852; Dec. Dig. ⊂∞662(3).]

3. APPEAL AND ERROR ⊂∞766 — IMPERFECT BRIEFING OF ASSIGNMENT—CONSIDERATION.
Where an assignment is not properly briefed, but the same matter is presented under another assignment, it will be considered on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3101, 3126; Dec. Dig. ⊂∞766.]

4. FRAUDULENT CONVEYANCES ⊂∞292—EVIDENCE — COLLATERAL ISSUE TENDING TO SHOW FRAUD.
In suit by the grantee of land to restrain sale on execution against the grantor, defendants were entitled, under their allegation of fraud in the conveyance to prove plaintiff had undervalued certain residence property, as tending to prove that he had overvalued a barn which he had given in part payment for the land, and which he testified he took, together with the residence property, at a valuation of $9,000, while receiving the residence property at only $2,000, since, where fraud is alleged, latitude must be allowed in the admission of evidence tending to establish it.
[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 857–861; Dec. Dig. ⊂∞292.]

5. FRAUDULENT CONVEYANCES ⊂∞293—EVIDENCE—INTENT.
In such suit, the evidence was relevant on the issue of good faith on the part of plaintiff and his grantee in making the exchange.
[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 862; Dec. Dig. ⊂∞293.]

6. FRAUDULENT CONVEYANCES ⊂∞291(5) — VALUE OF PROPERTY—MARKET VALUE.
Where the value of the property involved in an action to set aside a fraudulent conveyance is in issue, the market value should be the subject of inquiry, providing the property has a market value, and, if there is no market for such property, its intrinsic value may be established.
[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 856; Dec. Dig. ⊂∞291(5).]

7. FRAUDULENT CONVEYANCES ⊂∞309(2) — LIMITING FINDING TO MARKET VALUE.
In suit by the grantee of land to restrain sale on an execution against the grantor, where there was abundant evidence on the issue of the market value of the property, the court should have given the requested instruction limiting the jury's finding to such value.
[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 947, 958; Dec. Dig. ⊂∞309(2).]

8. FRAUDULENT CONVEYANCES ⊂∞187—RIGHT OF CREDITOR.
Where a conveyance was in fraud of creditors, a judgment creditor had the right to subject to payment of his judgment the excess, if any, of the market value of the property conveyed over and above the market value of the property received in exchange by the debtor.
[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 593, 594; Dec. Dig. ⊂∞187.]

9. FRAUDULENT CONVEYANCES ⊂∞309(7) — SEPARATE SUBMISSION OF ISSUES.
In suit by grantee of land to restrain sale on execution against the grantor, the question of the market value of the grantor's property and of the property received by him from plaintiff in exchange should have been submitted separately to the jury.
[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 952; Dec. Dig. ⊂∞309(7).]

10. FRAUDULENT CONVEYANCES ⊂∞309(4) — SUBMISSION OF ISSUES.
In such suit, fraud being charged, the issues of fraudulent intent and of notice should also have been submitted.
[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 949; Dec. Dig. ⊂∞309(4).]

Appeal from District Court, Hale County;
R. C. Joiner, Judge.

Suit by J. H. Slaton and another against the Citizens' National Bank of Plainview and another. From a judgment for plaintiffs, defendants appeal. Judgment reversed, and cause remanded.

Turner & Rollins, of Amarillo, and C. D. Russell, of Plainview, for appellants. Mathes & Williams, of Plainview, and L. C. Penry, of Ft. Worth, for appellees.

HALL, J.   February 10, 1913, the Citizens' National Bank of Plainview obtained judgment in the district court of Hale county, against J. J. Rushing et al., in the sum of $13,240.49, with interest and costs of suit. From this judgment Rushing et al. executed a supersedeas bond, with J. L. Overall as one of the sureties. The judgment was affirmed by this court the 29th day of November, 1913. Application for writ of error to the Supreme Court having been refused, on August 18, 1915, the Citizens' National Bank caused an alias execution to issue to Swisher county, which was levied by the sheriff on a certain section of land as the property of J. L. Overall. Appellee Slaton obtained an injunction against the Citizens' National Bank and D. B. Crawford, the sheriff of Swisher county, restraining them from selling the land upon the ground that it belonged

to him and the First National Bank of Plainview, it being alleged that Slaton had an interest amounting to $4,000 in said section, and that the remaining portion was owned by said First National Bank. October 20, 1914, Overall and wife conveyed the section in question to J. H. Slaton, by deed, reciting a consideration of $16,000 cash and the assumption of the payment of the balance due the state of Texas on the original purchase price and the annual interest thereon at the rate of 3 per cent. per annum from November 1, 1914. On the same date Slaton and wife conveyed to Overall lots 10, 11, 12, 13, 14, 15, and 16 in block 19, in the town of Plainview, for the recited consideration of $16,000, to wit, $14,800 cash and $1,200, evidenced by vendors' lien notes, payable to J. H. Slaton.

Appellants attack this conveyance from Overall to Slaton on the ground that it was made to hinder, delay, and defraud the creditors of Overall, especially defendant bank in the collection of the aforementioned judgment, asserting the right of the bank to subject the land to the payment of its judgment as the property of Overall. It is further alleged that, when Slaton acquired the deed from Overall and wife to said section, he had full knowledge of all the facts recited in said answer, or was in possession of sufficient facts to put him on notice and inquiry, which would have led to a discovery of the fact that Overall was making said conveyance for the purpose of hindering, delaying, and defrauding the bank in the collection of its judgment, alleging the insolvency of Overall; that a deed from Overall to Slaton was a simulated transaction, not intended to be an absolute and unconditional conveyance, but was made with the purpose and intention on the part of Overall and Slaton that the latter should hold the deed in trust for Overall and shield it from the Citizens' National Bank, said Slaton and said First National Bank well knowing that the defendants Rushing and the sureties other than J. L. Overall did not have property subject to execution sufficient to pay said judgment, and that said bank would be compelled to make said judgment or a large part of it out of the sale of said section of land, or lose its debt, or a large amount thereof; that said section comprised practically all of the property belonging to Overall and subject to execution; that its value greatly exceeded the amount of the debt, if any, owing by Overall to the First National Bank of Plainview, it having been alleged by Slaton and said First National Bank that Overall owed the bank about $3,000. Appellants further alleged that less than one-fourth of the section would have been sufficient to pay the whole of the indebtedness, and that the value of a certain barn conveyed to Overall by Slaton was greatly less than the value of the section, being only one-half of the value thereof, and that in accepting the conveyance of the said section of land the vendee did not pay

full value therefor, so that the remainder of the value of said land was thereby placed beyond the reach of the creditors of said Overall, and particularly of the Citizens' National Bank. Notice and knowledge on the part of Slaton and the First National Bank of Plainview of the fraudulent intent and purpose of Overall and knowledge of facts sufficient to put them on inquiry, which would have led to the truth concerning such fraudulent intent and designs, was also set up.

The trial resulted in a judgment in favor of J. H. Slaton and the First National Bank of Plainview, against the defendants Citizens' National Bank and D. B. Crawford, as sheriff, perpetuating the injunction restraining them from levying upon and selling, or from attempting to sell, said land under the judgment.

[1, 2] It is urged under the first assignment that the court erred in excluding the testimony of J. F. Moore as to sales of land similar to the section of land in question during the years 1912, 1913, and 1914, and the prices paid therefor. This witness, testifying for appellants, stated that the section of land in controversy was reasonably worth on the market $30 per acre at the time it was conveyed by Overall to Slaton, in October, 1914. On cross-examination by plaintiffs' counsel, he was asked as to whether he knew of certain sales of land in Swisher county near the land in controversy, at $15 per acre, and other at less than $25 per acre. On redirect examination appellants' counsel offered to show that land located no better than the land in controversy, of the same soil, depth to water, and topography, and in every way similar to the land in controversy, had been within the knowledge of said witness during the year 1914 sold at $25 per acre. When the particular lands referred to were mentioned, appellees' counsel objected because the lands were not of the same character as the section in question in regard to improvements, but were unimproved lands. It is stated in the bill of exceptions that appellants' counsel then offered and would have proved by the witness that the value of land of the same character as the land in question, without improvements on it, and in the same locality, had been sold during the year 1914 for as much as $25 per acre, and that this testimony was offered in order that the jury might determine the value of the land in controversy by adding the value of improvements thereon. The court appended to the bill the following qualification:

"The witness was asked on cross-examination if he knew of certain sales being made at $15 per acre, and answered no; and it was further asked if there was any difference between this land here located as it is and other plains land near Kress, the same distance in other directions, and the witness stated in his opinion land west and north of Kress was worth a right smart more. The lands the witness knew about as having been sold in 1914 were from seven to nine miles from the land in controversy, one

sale four and one-half miles west of Kress and the other nine miles east; and the witness would have answered that these lands unimproved sold for $25 per acre. The land in controversy was shown to have a lake of 40 acres on it, and no proof as to the condition of the other lands as to lakes was asked about, and the question ,as to the values of these unimproved sales were, in the opinion of the court, not a fair test as to the market value of the land in controversy, since the witness had testified as to the market value of the principal section."

Appellant insists, upon the authority of certain Massachusetts cases, that he could prove the value of unimproved lands for the purpose of establishing the value of the land in question, which was shown to have been improved. This question arose in the case of Foster y. Atlir, 181 S. W. 525, Walthall, Justice, said:

"The admissibility of the evidence offered, under any circumstances, is at least doubtful. In some jurisdictions it is excluded altogether. The grounds for its exclusion have not always been the same. Some exclude it on direct examination altogether; some hold that its admissibility is a matter of discretion; others still, that such evidence is only admissible on cross-examination, as a test of the means of knowledge of a witness who has testified to the market value on direct examination. We are of the opinion, however, that the Supreme Court, in Chaney v. Coleman, 77 Tex. 100, 13 S. W. 850, recognized the rule that, under a proper predicate, such evidence is admissible."

The Chaney Case seems to be the last opinion by the Supreme Court discussing the question. That court said:

"It is not readily seen how its value can be correctly shown by comparing it with others, as was proposed to be done by the defendant in this case. The farm in question was an improved one, and was valued in the trade as such. Before a value can be given to it by proving the average value of farms in that vicinity, it should be proved that the improvements and other things to be considered in estimating its value correspond with like things and the farms with which it is classed."

The facts stated in the court's qualification to the bill must be taken by us as correct. If so, it was not error to exclude the testimony. H. B. & T. Ry. v. Wilson, 176 S. W. 907; City of Ft. Worth v. Charbonneau, 166 S. W. 387; Koppe v. Koppe, 57 Tex. Civ. App. 204, 122 S. W. 68; Sullivan v. Ry. Co., 29 Tex. Civ. App. 429, 68 S. W. 745; Newbold v. Railway Co., 34 Tex. Civ. App. 525, 78 S. W. 1079; Kirby v. Ry. Co., 39 Tex. Civ. App. 252, 88 S. W. 281; H. B. & T. Ry. Co. v. Dooley, 160 S. W. 594.

[3-5] By their second assignment, appellants insist that the court erred in excluding the testimony of the witness J. A. James, with reference to a material change in the value of lands in his vicinity during the years 1912, 1913, and 1914. Reference to the statement of facts shows that this question was asked and answered by the witness on cross-examination. It appears that, prior to the transfer of the section of land in question by Overall, Slaton and the First National Bank had received from one of the creditors of the bank certain residence property, together with a barn, in Plainview. In the deal between Overall and Slaton this barn was part of the consideration for the section of land conveyed by Overall. Slaton testified that he valued the residence property at only $2,000 and the barn at $9,000. The witnesses Boswell and Galloway were offered for the purpose of showing the value of the residence property. Appellants insist that it is greatly to the interest of appellee to inflate and exaggerate the value of the barn and to underrate the value of the residence property as much as possible, and, in order to show that Slaton was endeavoring to do this, they sought to establish the real value of the residence property by said witnesses. Upon objection, this testimony was excluded. The assignment based upon the exclusion of Boswell's testimony is not properly briefed, but since the same matter is presented under the fourth assignment, based upon the exclusion of Galloway's testimony, we will consider it. It will be remembered that fraud is specifically charged by the appellant and where fraud is alleged great latitude must be allowed in the admission of evidence tending to establish the charge. The value of the residence property, it is true, is in a sense a collateral issue; but as said in 10 R. C. L. 927, § 91:

"It is not necessary, however, that the evidence should bear directly upon the issue. It is admissible if it tends to prove the issue or constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it. * * * It is well settled that, if the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury. It would be a narrow rule, and not conducive to the ends of justice, to exclude it on the ground that it did not afford full proof of the nonexistence of the disputed fact. Evidence upon a collateral issue may be relevant if the fact which it tends to establish will tend to prove or disprove the fact in issue." Horton v. Reynolds, 8 Tex. 284; Day v. Stone, 59 Tex. 612.

While the residence property was not included in this trade, the issue sought to be established was that the value of the section of land conveyed by Overall was greatly in excess of the value of the property conveyed to him in exchange therefor, a part of which was the barn in question. Appellants insisted, and had the right to introduce all relevant testimony to sustain their contention, that the barn was not really worth $9,000. To establish its value, Slaton had testified that he had received it, together with the residence property, from one of the bank's debtors at a valuation of $9,000, while the residence property had been received in the same transaction at only $2,000. We think under their allegation of fraud the appellants were entitled to prove by direct and circumstantial evidence that Slaton had overvalued the barn, and proof that he had undervalued the residence property was a collateral fact tending to sustain their contention. Moreover, the evidence was relevant upon the issue of good faith, on the part of

both Overall and Slaton, in making the exchange.

[6-10] In the case of Torrey et al. v. Cameron et al., 73 Tex. 583, 11 S. W. 840, the trial court charged the jury that the value of the property was "what it would sell for cash in the ordinary course of trade in the manner in which property is ordinarily sold in this market," and this charge was approved. We think where the value of the property, involved in an action to set aside a fraudulent conveyance, is in issue, the market value should be the subject of inquiry, provided the property has a market value, and, in the event there should be no market for such property, then its intrinsic value may be established. There seems to have been abundant evidence in this case upon the issue of market value, and the court should have given the requested instruction limiting the finding of the jury to such value. If the conveyance was in fraud of creditors, appellant bank had the right to subject the excess, if any, in the market value of the real and personal property conveyed by Overall, over and above the market value of the property conveyed by Slaton, to the payment of the judgment, and the question of the market value of the respective properties should have been submitted separately to the jury. Fraud being charged, the issues of fraudulent intent and of notice should have also been submitted. The court erred in refusing special charges requested by appellants submitting such issues.

The judgment is reversed, and the cause remanded.