354

**TOWNSEND et al. v. CHAILLETT et al.**

No. 7632.

Court of Civil Appeals of Texas. Austin.

Oct. 28, 1931.

Works & Bassett, of Amarillo, and Woodruff & Holloway, of Brownwood, for appellants.

Wilkinson & Wilkinson, of Brownwood, for appellees.

BLAIR, J.

Appellant Nannie Townsend, the only child of John Chaillett and his first wife Bettie Chaillett, both deceased, sued appellees, Augusta Chaillett, the second wife of John Chaillett, and their twelve children in trespass to try title to recover the Joseph Young 640-acre survey in Brown county. By another count in her petition, appellant alleged that her mother, Bettie Chaillett, out of her separate funds, loaned Harris G. Smith $1,000, with which he purchased the land in controversy; that Smith never repaid the loan during the lifetime of Bettie Chaillett, but that after her death her husband, John Chaillett, accepted a deed from Harris G. Smith and wife to F. W. Schinkoth and a deed from Schinkoth to himself in final settlement and satisfaction of the loan; and that a constructive trust thereby arose in the land to the extent of her inherited interest in the purchase money.

Answering special issues, the jury found that out of her separate funds Bettie Chaillett loaned Harris G. Smith $1,000 with which he purchased the land in controversy; that after the death of Bettie Chaillett the land was conveyed by Smith to Schinkoth and by Schinkoth to John Chaillett in final settlement and satisfaction of the loan. Notwithstanding these findings of the jury, the trial court refused appellant judgment upon the constructive trust pleaded, and granted appellees' motion "to render judgment in their favor on the undisputed evidence," and allowed appellant only an undivided one twenty-sixth interest in the land as heir of her father, subject to the life estate of Augusta Chaillett; hence this appeal.

■ We think that the evidence on the issue of whether a constructive trust in the land arose in favor of appellant to the extent of her inherited interest in the purchase money was sufficiently clear and satisfactory to require the submission of the issue to the jury; and that the court erred in disregarding the findings of the jury on the issue.

Wm. H. Greer et al. conveyed the land to Harris G. Smith by deeds dated in 1885 and 1886. Will Middleton, a man about 60 years of age, testified that during Christmas week of the year 1886 or 1887, Harris G. Smith and his wife lived on the land, and on that date the following occurred:

"I remember an occasion of Mr. Greer and Mr. Smith and myself and Mr. Chaillett and possibly another gentleman being there about the Chaillett property along about 1886 or 1887. About that time. John Gilliam was there also on that occasion. He was a brother to John Chaillett's wife. And she was the mother of Nannie Townsend here.

"To state what occurred there on that occasion. We were at home when Mr. Smith sent down there for Uncle Henry Middleton, and I went with him up there. I was living then with my Uncle Henry; he raised me. My parents were not living. I was fifteen or sixteen years old at the time. I was born in 1872, in Angelina County, at Homerville. When we got there we went out there to where Mr. Chaillett, Mr. Greer and them was, at the wood pile on the H. G. Smith place. That is this land that is in controversy now. * * *

"Mr. Smith asked Uncle Henry if our grandmother had the money, and he told him that she did, 'but she won't let you have it because she is going to buy a place. * * *'

"John Chaillett said that his wife had some money, and that they might get it there. He said that his wife had some money. And then Mr. Greer told him to call her out there and see if she would let him have it. * * *

"When she came out there Mr. Chaillett told her what he called her out there for, and she asked the amount. He said to his wife that he wondered if she would let Mr. Smith have her money to pay Mr. Greer for that place.

"As to whether Mr. Greer and Mr. Smith and the Chailletts were related in any way that I know of; well, they called each other cousins. * * *

"I will tell you what John Chaillett said to his wife, as I recall, about the money. He said, 'Well, Bettie, Cousin Will Greer has come after his money, his land deeds or a law suit, he did not care which, but was going to have one. I have not got enough money to let Cousin Harris have it. Haven't you got enough?' She says, 'I have one thousand dollars, and I want my money back the next fall and I won't let it go except that you and Cousin Harris promise me you will pay it back next Fall.' She was talking to her husband at that time. 'Unless you and Cousin Harris promise to get it back next Fall, to me,' is what she said.

"There was a child or baby about there that I saw. She handed him that kid (referring to appellant) sitting over there. Handed it to John Chaillett and she agreed to let him have the money. She handed him the check book. I had not seen one before. I remember that I got up on my feet to see it. I did not know what a check was no more than a rabbit. That was a little narrow piece of paper. She opened back a lid. She took a pencil and wrote in it. I did not know what she wrote. * * *

"There was something said about the amount needed. $1,000.00 Mr. Greer said. He had to have a thousand dollars, to satisfy his wants and to pay the notes off. That was the land that Smith was living on. I was on the land that Smith owed the money on at that time; I was sitting there on that wood pile. That is the land involved in this suit.

"Mr. Chaillet said something in that connection as to where Bettie, his wife, got this money or came by it. He did. She said her father gave her part of it, and she had cooked for hands on the railroad for the balance. * * *

"The fact that she was writing a check impressed me. She told Mr. Chaillett to give her a check and a pencil and she would pay the debt. That was a check book. I know now that it was, but I did not know then. She wrote the check in the book, and handed him the book and the pencil and all, and says, 'There is the money now.'"

Witness Middleton further testified that a few days after the above transactions Greer, Smith, and John Chaillett went to Brownwood in a wagon; that Greer lived in another state; and that he never saw him again. Appellant was born January 15, 1886. Her mother, Bettie Chaillett, died intestate January 16, 1888, leaving appellant and John

Chaillett as her only heirs. July 11, 1889, Augusta Chaillett became the second wife of John Chaillett. Shortly after this marriage they and the Harris G. Smith family moved to Fort Bend county. The Chailletts returned to Brown county after a few years, but the Smith family never returned, and the record shows that Harris G. Smith was dead at the time of the trial of this cause. Soon after the Chailletts returned, John Chaillett came to the home of witness Middleton, and together they went to the land now in controversy. There John Chaillett offered to sell him the land for $1,000, and, concerning Chaillett's taking the place over for the debt, Middleton testified as follows:

"We went over to this land that is now in litigation. As to what he said: We went on up to the house. He looked around over the place, and says, 'Will, I want to make a trade with you.' I said, * * * 'I do not know what kind of trade.' And he said, 'I want to sell you this property to get this one thousand dollars.' He said, 'You remember the one thousand dollars paid on the woodpile.' And then I says, 'Good, God, ain't you got that thousand dollars yet?' And he said 'No.' And he said that I could have it on fifteen years time. As to whether he said anything about Smith turning it over to him: He said he could not pay it, that Cousin Josephine said—Cousin Josephine was H. G. Smith's wife. She said that John would never get it unless he took the place.

"He said that he made him the deeds back. He could not pay for it."

"I had quite an intimate acquaintance with him. I was as good a friend of John Chaillett as walked the earth. That friendship continued up until the time of his death."

Middleton further testified that the year before Chaillett died he told witness that he expected Nannie (appellant) to give the rest of the family (appellees) lots of trouble concerning the land.

Smith's possession of the land through his tenants was followed immediately by Chaillett's possession through his tenants and in person, which continued until Chaillett's death January 29, 1929, since which time his widow and some of the appellees have been in possession.

The trial court made the following special finding of fact: "I find that the plaintiff, Nannie Townsend, first learned that her mother had loaned Harris G. Smith One Thousand ($1000.00) Dollars to pay the purchase money notes on the land involved herein, and first learned that she, Nannie Townsend, had an interest in said land during the month of April, 1929."

This finding was in no way attacked.

The deed records of Brown county show the following transactions pertinent to this controversy: By two deeds, the first dated May 12, 1885, recorded June 15, 1900, and the second dated August 17, 1886, recorded September 16, 1886, Wm. Greer conveyed the land in suit to Harris G. Smith, each deed reciting a cash consideration of $1,000. By a deed dated January 10, 1896, recorded June 15, 1900, H. G. Smith and wife Josephine conveyed the land to F. W. Schinkoth, and recited the following as consideration: "* * * For and in consideration of the sum of Ten Dollars, to us in hand paid by F. W. Schinkoth, the receipt of which is hereby acknowledged, and for the further consideration that on the 26th day of December, 1894, the said H. G. Smith executed his certain promissory note payable to the order of John Chaillett one year after date for the sum of $976.70, given in renewal of the purchase money notes of land hereinafter described, and whereas, the said F. W. Schinkoth is now the legal owner of said note, now, in the further consideration of relinquishing the said H. G. Smith from the payment of said note, and that in consideration of the sale and conveyance of the land hereinafter described, has cancelled said note, and releasing the said H. G. Smith from all further liability on the same."

This deed was acknowledged on its date by grantors before John Chaillett, as justice of the peace and ex officio notary public in and for Fort Bend county. The first deed from Greer to Smith and this deed, according to the testimony of the county clerk of Brown county, were both filed for record by J. W. Schinkoth on June 15, 1900; and that the originals were still in his possession, having never been called for, and the recording fee had never been paid. The evidence was undisputed that Schinkoth was never in possession of the land and never asserted any claim to it. By a deed dated June 6, 1896, recorded June 8, 1896, Schinkoth conveyed the land to John Chaillett, and recited the following as consideration: "For and in consideration of the sum of One Hundred and fifteen dollars, and other valuable consideration paid and secured to be paid by John Chaillett as follows."

No other consideration was mentioned or described in the deed. There was in evidence a deed of trust, dated December 26, 1894, recorded January 1, 1895, executed by H. G. Smith, to Charles Rogan, securing the payment of a note for $976.70, payable to John Chaillett, and the note contained the following recitation: "The notes for which this note is executed as a renewal were for the purchase money of said tract of land, payable to the order of Wm. H. Greer, and by him transferred to John Chaillett."

The interest calculated at 8 per cent. on this $976.70 note from its date December 26, 1894, to June 6, 1896, the date of the deed

from Schinkoth to Chaillett, was $113.94, which, plus a $1 recording fee chargeable to Schinkoth, aggregated $114.94, thus lacking only six cents of being the recited consideration for the deed. There was also another deed of trust in evidence, dated June 8, 1896, recorded June 8, 1896, securing the payment of notes executed by John Chaillett to S. H. Bass, aggregating $450, conveying the land in suit.

■■ There can be no question but that the above evidence was sufficiently clear and satisfactory to require the submission of the issues and to sustain the findings of the jury to the effect that Bettie Chaillett, out of her separate funds, loaned Harris G. Smith $1,000 with which he paid the purchase money note on the land in controversy; and that the trial court so regarded the evidence is indicated by its special findings to the effect that appellant first learned in April, 1929, of these transactions and of her mother's interest in the purchase-money note. It is therefore manifest that, in rendering judgment non obstante veredicto, the trial court took the view that since the land was deeded by Smith to Schinkoth, who in turn deeded it to Chaillett, and since the deed to Schinkoth recited that he owned the note which was canceled as consideration for the deed, the parol testimony of Middleton that Chaillett told him Smith "couldn't" pay the note and made him "deeds to the land" in settlement of the note, was contradictory of and controlled as a matter of law by the recitations in the deeds. This conclusion of the trial court is erroneous for two reasons: First, assuming the recitations in the two deeds were contradictory to Middleton's testimony, that merely presented the question of whether they should be given greater weight than the oral testimony, and the determination of that question was for the jury. Middleton's testimony was clear and explicit that John Chaillett, while in possession of the land and claiming it as his own, told witness that Smith could not pay the purchase-money note, and so made deeds to Chaillett in consideration of the cancellation of the purchase-money note. It is well settled that, "as a general rule, declarations made by a person in possession of real estate, as to his interest or title in the property, may be given in evidence against those who subsequently derive title under him, in the same manner as they could have been used against the party himself if he had not parted with his possession or interest." 26 R. C. L. 1229. Smith v. Burroughs (Tex. Civ. App.) 34 S.W.(2d) 364, 366, and cases there cited.

■ In this connection, appellees cite several cases involving the rule that resulting trusts in real property must be established by clear and satisfactory proof. Appellant did not seek a recovery upon the theory of a resulting trust. Her theory of recovery was that because her mother loaned Smith $1,000 with which he paid the purchase price of the land, and because after her mother's death, intestate, appellant's father accepted deeds to the land in satisfaction of the purchase-money indebtedness, and thereafter claimed the land as his own, a constructive trust in the land arose in favor of appellant to the extent of his inherited interest in the purchase-money note as a matter of equity purely independent of the intention of the parties. But, if applicable to the extent contended for by appellees, the clear and satisfactory rule was fully met by appellant. That rule does not authorize the trial court to pass upon the weight and credibility of testimony, but merely requires that the court determine whether there is clear and satisfactory evidence tending to establish the constructive trust; and, if so, the question is for the jury. The testimony as to whether John Chaillett purchased the land in consideration of the cancellation of purchase-money note, or even with the proceeds of that note, or with money he considered as the proceeds of that note, was clear and explicit, in that he told Middleton that Smith "couldn't" pay the note, and made him "deeds to the land" in settlement of the note; and as constructive trustee of his minor child's interest in the note or the land John Chaillett ought to have known these facts. Manifestly the action of the trial court in rendering judgment non obstante veredicto wholly disregarded this testimony of Middleton.

With regard to the quantum of proof, it was held in the case of Torrey v. Cameron, 73 Tex. 591, 11 S. W. 840, 842, where a resulting trust was sought to be ingrafted upon land deeded to the husband on the ground that his wife's money paid for it, as follows:

"We do not doubt that the trust property or fund must be clearly traced; that is to say, where there have been successive transfers, each link in the chain of transfers through which it is sought to establish the trust must be distinctly pointed out. It is not sufficient by proof of circumstances to raise a strong presumption that in some way, not clearly shown, the wife's separate estate has passed into the property in which the trust is sought to be established. But when the train of transfer has been clearly shown we do not think that the consideration of each conveyance need be indisputably proved.

"The evidence should be sufficient to produce belief in the minds of the jury that the property has been distinctly traced through all its mutations, but it need not place the question beyond dispute."

See, also, Brackenridge v. Roberts, 114 Tex. 418, 267 S. W. 244, 270 S. W. 1001; Reinhardt

v. Nehring (Tex. Com. App.) 291 S. W. 873; Dismukes v. Gilmer (Tex. Civ. App.) 286 S. W. 495; Mansfield v. Rigsby (Tex. Civ. App.), 273 S. W. 290.

■ Second, the rule is well settled that one may prove by parol that a parent who invests money belonging to his child in real property, and takes title in his own name and claims it as his own, he thereby becomes the constructive trustee of the property for the child to the extent of the child's interest in the purchase money, and in such cases the parol evidence is not considered or regarded as being in conflict with the contrary recitations of the deed, but as explaining them and as corroborating the trust plead. Spencer v. Pettit (Tex. Civ. App.) 17 S.W.(2d) 1102; Seaman v. Cook, 14 Ill. 501; Alexander v. Harris (Tex. Civ. App.) 254 S. W. 146; Turner v. Dinwiddie (Tex. Civ. App.) 276 S. W. 444; Hand v. Errington (Tex. Civ. App.) 233 S. W. 567; Id. (Tex. Com. App.) 242 S. W. 722; Id. (Tex. Com. App.) 248 S. W. 25; Pearce v. Dyess, 45 Tex. Civ. App. 406, 101 S. W. 549; Belcher Land Mortgage Co. v. Clark (Tex. Civ. App.) 238 S. W. 685. The evidence in this case simply shows that John Chaillett first became interested in the land as agent for his wife in helping lend her separate money to Smith, and with which Smith paid the purchase-money notes then due on the land. Chaillett, as was customary and as a matter of convenience in transacting this business for his wife, took the note evidencing the loan and deed of trust, securing it in his own name. While this note was outstanding, Bettie Chaillett died intestate, leaving her husband and appellant as her only heirs at law, and who inherited the note as personal property; one-third going to the husband, and two-thirds going to the daughter in accordance with the law of descent and distribution. The land was then conveyed by Smith to Schinkoth, in consideration of the cancellation of the note payable by its terms to John Chaillett; the deed reciting that he had transferred the note to Schinkoth, and that the note was in renewal of the purchase-money notes of the land in controversy. Thus the train of transfer of the land was clearly shown, and as was said by Judge Gaines in the case of Torrey v. Cameron, supra, "when the train of transfer has been clearly shown we do not think that the consideration of each conveyance need be indisputably proved"; and the evidence is sufficient if it would "produce belief in the minds of the jury that the property has been distinctly traced through all its mutations." This burden of proof appellant clearly met by the testimony of witness Will Middleton; his testimony being supported by the train of transfer of the property to John Chaillett as detailed above. That is, given the train of transfer to John Chaillett as evidencing the legal title in him, Middleton's testimony that Chaillett told him that Smith "couldn't" pay the purchase-money note, so gave Chaillett "deeds to the land," in settlement and satisfaction of the note, is sufficient as tracing the trust fund into the land. Apparently Chaillett did not want to buy the land originally, but took it to save the $1,000 loan against it, and offered to sell it to Middleton "to get this thousand dollars paid on the woodpile"; Chaillett offering to lose all the interest.

■ There is no merit to the contention of appellees in support of the judgment rendered that the facts show that John Chaillett borrowed the $1,000 from Bettie Chaillett. and that after the lapse of such a long period of time it will be presumed that John Chaillett repaid her said money. This contention is based upon the following portion of Middleton's testimony: "She says, 'I have one thousand dollars, and I want my money back next fall and I won't let it go except that you and Cousin Harris promise me you will pay it back next fall.' She was talking with her husband at that time. 'Unless you and Cousin Harris promise to get it back next fall to me,' is what she said."

The record does not show that this contention was made upon the trial of the case. No pleadings covered it, nor was the issue submitted to the jury, and therefore cannot be raised here for the first time. However, the finding of the jury to the effect that Bettie Chaillett loaned Harris G. Smith the money directly refutes the contention; and, according to all the positive evidence, it was Smith who wanted to borrow the money, and Bettie Chaillett's money was loaned to him.

■ The $1,000 loan to Smith was the separate personal property of Bettie Chaillett, and, upon her death intestate, her husband inherited a one-third and appellant a two-thirds interest in the loan, under provision of article 2571, R. S. 1925. When John Chaillett later accepted deeds to the land in satisfaction of the loan, title vested in him for his own one-third interest; and in him in trust for appellant to the extent of her two-thirds interest. John Chaillett having inherited his one-third interest in the purchase price of the land in suit, it became his separate property under provision of article 4613, R. S. 1925, and, upon his death intestate, appellant inherited a one-thirteenth undivided interest in his one-third interest, subject to the life estate of Augusta Chaillett in one-third of John Chaillett's one-third interest. The jury's findings and the evidence gave appellant this interest in the land, and the trial court should have rendered judgment in conformity thereto. This court must therefore render the judgment the trial court should have rendered, and accordingly the judgment of the trial court is reversed and judgment is here rendered in favor of appellant for her above interest in the land in controversy.

**Reversed and rendered.**