FIRST STATE BANK & TRUST CO. OF ABILENE et al. v. WALKER. (No. 587.)*

(Court of Civil Appeals of Texas. El Paso. June 15, 1916. Rehearing Denied June 29, 1916.)

1. FRAUDULENT CONVEYANCES ⊙⇒74(3)—GIFT —STATUTE.

Under Rev. St. art. 3967, relating to fraudulent conveyances, to sustain a gift of land as against prior creditors it must appear that the grantor was, at the time of making the gift, possessed of property within the state subject to execution, sufficient to pay his existing debts.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 188; Dec. Dig. ⊙⇒ 74(3).]

2. FRAUDULENT CONVEYANCES ⊙⇒206(2) — STATUS AS PRIOR CREDITOR—RENEWAL NOTE.

Where a creditor takes a renewal note for his debt after the debtor makes a voluntary conveyance, the original debt still continues and has precedence over the fraudulent conveyance, if the debtor was insolvent at the time of the gift.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 630; Dec. Dig. ⊙⇒ 206(2).]

3. SUBROGATION ⊙⇒23(3)—PAYMENT OF MORTGAGE—VOLUNTARY PAYMENT.

A party, who, without interest to protect, voluntarily loans to a mortgagor to satisfy and cancel the mortgage, taking a new mortgage for his own security, cannot have the former mortgage revised and himself subrogated to the rights of the mortgagee, unless a subrogation takes place by reason of the agreement of the parties.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 63; Dec. Dig. ⊙⇒23(3).]

4. SUBROGATION ⊙⇒41(6)—PAYMENT OF MORTGAGES—AGREEMENT.

The mere delivery, to the party loaning money to a mortgagor for the purpose of satisfying and canceling the mortgage, of the instrument and the note was not sufficient to show an express or implied agreement that the lender should be subrogated to the rights of the mortgagee under the old instrument, being an evidentiary fact merely tending to show such agreement.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 115; Dec. Dig. ⊙⇒41(6).]

5. SUBROGATION ⊙⇒23(1)—PAYMENT OF MORTGAGES—RETENTION OF INSTRUMENTS.

Where money was lent a mortgagor to discharge mortgages, and the lender retained the instruments, their payment gave it the right of subrogation if it was not a mere volunteer.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 60; Dec. Dig. ⊙⇒23(1).]

6. FRAUDULENT CONVEYANCES ⊙⇒272 — SOLVENCY OF GRANTOR—BURDEN OF PROOF.

In suit to remove cloud on title, by one claiming under a parol gift from a debtor, against lenders of money to him, claiming the rights of mortgagees by subrogation, the burden was on plaintiff to show her donor's solvency at the time of the gift only if defendants were prior creditors of the donor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 804; Dec. Dig. ⊙⇒ 272.]

7. FRAUDULENT CONVEYANCES ⊙⇒271(1) — STATUS AS PRIOR CREDITOR — BURDEN OF PROOF.

In suit to remove cloud on title, by one claiming under a parol gift from a debtor, against lenders of money to him claiming the rights of

mortgagees by subrogation, the burden was on defendants to show that they were prior creditors of the donor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 796; Dec. Dig. ⊙⇒ 271(1).]

8. WITNESSES ⊙⇒159(7)—DISQUALIFICATION— TRANSACTIONS WITH DECEDENT — ACTION AGAINST CORPORATIONS.

In suit by one claiming under a parol gift from a decedent against corporations to cancel liens claimed by defendants as creditors of decedent, and to remove the cloud from her title, testimony of plaintiff as to transactions with, and statements by, such decedent showing the gift was admissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 674; Dec. Dig. ⊙⇒159(7).]

Appeal from District Court, Taylor County; Thos. L. Blanton, Judge.

Suit by Mrs. Alice G. Walker against the First State Bank & Trust Company of Abilene and others. From a judgment for plaintiff, defendants appeal. Affirmed.

J. M. Wagstaff and D. M. Oldham, both of Abilene, and O. C. Mulkey, of Commerce, for appellants. J. W. Moffett, of Abilene, for appellee.

WALTHALL, J. Mrs. Alice G. Walker brought this suit against the First State Bank & Trust Company of Abilene, Kansas City Life Insurance Company, Dalby & Ray, administrators of the estate of A. G. Hamilton, deceased, and Ford Fleming, for 100 acres of land in Taylor county, and alleged that, during his lifetime, A. G. Hamilton made a parol gift of the land to her, that she went into possession of the land under the gift, made valuable improvements thereon, and was entitled to recover same from the administrators of the estate and the other defendants who were lienholders on the land. She asked for a cancellation of the liens and removal of cloud from title.

Fleming answered that he had no interest, and was a mere trustee of the Kansas City Life Insurance Company. The Kansas City Life Insurance Company answered by general demurrer, general denial, alleged that it was a lienholder on the land, its lien having been placed on the land by A. G. Hamilton during his lifetime, that it had no notice of plaintiff's claim, that its claim had been proved up before the administrators and allowed as a lien claim, that its claim was a continuation of a mortgage originally executed and placed on said land prior to plaintiff's claim, and was a valid lien even if there was a parol gift to plaintiff; that, at the time of the alleged gift, Hamilton was largely indebted to others over and above the value of his property; that his indebtedness includes large sums for the purchase of the land described in plaintiff's petition. The Kansas City Life Insurance Company also plead that it was subrogated to the rights of a mortgage executed by Hamilton

to Russell, and that mortgage taken up by Aston, the Russell mortgage being prior to the alleged gift. Dalby & Ray answered by general denial, general demurrer, and adopted the pleadings of the First State Bank & Trust Company and the Kansas City Life Insurance Company. The First State Bank & Trust Company adopted the pleadings of the Kansas City Life Insurance Company and set up the mortgage on the land involved in this suit, and alleged that it was an innocent lienholder for value. The appellee, by supplemental petition, denied the facts alleged by defendants; denied that defendants were creditors of Hamilton at the time of the parol gift, but were subsequent creditors and lienholders with notice; that, if any debts or liens existed on the land claimed by her at the time, same has long since been paid off, canceled, and released of record. The following are the questions submitted to the jury and their answers:

"No. 1. Did A. G. Hamilton, by designation and description sufficient to identify it, give the 100 acres of land in controversy to the plaintiff in 1908? Answer: Yes.

"No. 2. When the plaintiff went upon the land in controversy in October, 1909, did she then take possession of the land as her own property under a bona fide belief that the absolute fee of said land had been given to her by A. G. Hamilton? Answer: Yes.

"No. 3. Has the plaintiff been in continuous possession of the land in controversy and claiming the same as her property since October, 1909? Answer: Yes.

"No. 4. At the time A. G. Hamilton caused the house to be moved upon the land in controversy, was he acting for plaintiff, and did he intend that such should become the property of the plaintiff? Answer: Yes.

"No. 5. At the time R. G. Hamilton grubbed certain land, and built certain fences, sheds, barns, and outhouses upon the land in controversy, did he make such improvements for the plaintiff as her property? Answer: Yes.

"No. 6. During the time the plaintiff has occupied the premises in controversy, has any one else, claiming such premises adversely to her, or holding under others claiming adversely to her, occupied said house with her? Answer: No.

"No. 7. At the time he took his mortgage on October 1, 1910, did W. J. Aston have constructive notice of the claims of plaintiff to the property in controversy? Answer: Yes.

"No. 8. At the time the representatives of the Kansas City Life Insurance Company took its mortgage on December 4, 1911, did they have constructive notice of the claims of plaintiff to the land in controversy? Answer: Yes.

"I further instruct you that where, at the time of the execution of a mortgage, a person other than the mortgagor is in actual possession of the mortgaged premises, and such possession is open, notorious, and visible and unequivocally hostile to the mortgagor, then, in law, such possession would be sufficient to put the mortgagor upon inquiry as to the rights of the person in possession.

"No. 9. At the time he took his mortgage on October 1, 1910, did the possession of plaintiff meet the above requirements such as to put the said Aston upon inquiry? Answer: Yes.

"No. 10. At the time the representatives of the Kansas City Life Insurance Company took its mortgage on December 4, 1911, did the possession of plaintiff meet the above requirements such as to put said representative upon inquiry? Answer: Yes."

To the following special questions, the jury made the following answers:

"No. 1. Did the plaintiff place on the land, involved in this suit, improvements, after October 6, 1909? Answer: Yes.

"No. 2. If plaintiff placed improvements on the land after October, 1909, what was the value of such improvements so placed on the land? Answer: $584.

"No. 3. Did the agent of the Kansas City Life Insurance Company use such care and diligence to discover the plaintiff's claim to the land, if any, as an ordinarily prudent person would use under the same or similar circumstances? Answer: No.

"Question (a). Was the improvement placed on the land in controversy by A. G. Hamilton or by Mrs. Alice Walker? Answer: Mrs. Walker.

"Question (b). What was the value of said improvements? Answer: $884.

"Question (c). What was the value of the use, that is, the rental value of said premises and land, from October 6, 1909, to the present date? Answer: $500.

"Question (d). Has R. G. Hamilton been a tenant of A. G. Hamilton since October 6, 1909? Answer: Yes.

"Question (e). If so, then concerning what land or lands? Answer: Land or lands, but not lands in controversy."

On defendant's motion for additional findings, the court made the following additional findings:

"(1) The evidence in this case failing to show that, during the years 1907, 1908, 1909, 1910, 1911, 1912, and 1913, or during any of said years, the said A. G. Hamilton was insolvent, the court finds that the said A. G. Hamilton was solvent.

"(2) That on October 1, 1908, A. G. Hamilton executed to J. C. Russell a note for $5,000 and to secure same a mortgage covering the land in controversy, and also 197 acres of additional land, which mortgage was at once recorded in the county clerk's office of Taylor county, Tex.

"(3) That after said Russell note became due, on October 1, 1909, the said A. G. Hamilton borrowed from W. J. Aston, $6,725, to pay off said Russell note, and executed and delivered to W. J. Aston a note for such amount and likewise a mortgage upon the same land covered by the Russell mortgage, which mortgage was placed of record in Taylor county, immediately thereafter.

"(4) That about the 1st day of December, 1911, the said Hamilton borrowed from the Kansas City Life Insurance Company, one of the defendants in this case, the sum of $7,000, which he used in paying off the said Aston note; and at such time the said Hamilton executed and delivered to the said Kansas City Life Insurance Company a note for said amount, secured by a mortgage upon the above-mentioned land and other lands, which mortgage was properly recorded in the office of the county clerk of Taylor county, Tex. At the time the above note and mortgage were given to the Kansas City Life Insurance Company, all of the Aston papers were likewise delivered to said insurance company.

"(5) At the time said Russell made said loan, Cunningham and Oliver, attorneys of Abilene, examined the title of such land for him; and, at the time said Aston and the Kansas City Life Insurance Company made their loans, J. M. Wagstaff, an attorney of Abilene, examined the title for them, and, at the time of the loaning of said money respectively, each of said mortgagees believed that they were loaning money to A. G. Hamilton and believed that said A. G. Hamilton had good title to the land covered by their mortgages, and believed that they were getting a first lien on said land.

"(6) As to all other matters which the defendants have requested the court to find on, it is the opinion of the court that the record does not warrant the court in making the findings such as are requested by the defendants, and the court therefore declines to make the findings."

The court rendered judgment for plaintiff for the 100 acres of land in controversy, and decreed that the deed of trust executed by A. G. Hamilton to Fleming for the use and benefit of the Kansas City Life Insurance Company, and the deed of trust executed by Hamilton to Bynum as trustee for the First State Bank & Trust Company, so far as they cover the one hundred acres, be canceled; that the cloud on appellee's title by reason of said deeds of trust be removed, and that appellee be quieted in her title as to all of appellants.

The refusal of the court to give appellants' peremptory instructions to the jury, to find in favor of appellants, is made the ground of error in each of the first three assignments, the first, on the ground that there is no evidence in the record tending to show that Hamilton was solvent at the time of the alleged gift of the land to appellee, there being evidence to show that, at the time of the gift, Hamilton owed debts which have not been paid, said debts having been proved up before the administration of the estate of Hamilton, and said debts are now represented in this suit by the administration of the Hamilton estate; the second, on the ground that the peremptory instruction should have been given for the reason that there was no testimony to show that appellee had made valuable improvements on the land, the evidence showing that the improvements were placed there by Hamilton; the third assignment claims that the peremptory instruction should have been given in appellants' favor on the ground that the evidence fails to show exclusive possession and control of the land under the alleged gift.

[1] In order to sustain the gift under article 3967, Revised Statutes, as against prior creditors, it must appear that such debtor was then possessed of property within this state subject to execution, sufficient to pay his existing debts. In Maddox et al. v. Summerlin et ux., 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567, our Supreme Court construes the above article as placing the burden on the one seeking to uphold the gift to show the solvency of the donor, at the time of the gift, as to prior creditors. Two questions are thus presented: Are appellants prior creditors? If they are, has appellee discharged the burden of showing the solvency of Hamilton at the time of the gift? The issue of Hamilton's solvency at the time of the gift was not submitted to the jury. We do not find in the record a request by either for a finding as to whether Hamilton was solvent at the time of the gift. The court's first additional finding is not such finding, although possibly intended to be such. The jury found that Hamilton made a gift of the land to Mrs. Alice G. Walker, in 1908, and that she took possession of the land under the gift in October, 1909.

[2] At the request of appellants, the court made additional findings of fact. The court found that on October 1, 1908, Hamilton executed to Russell a note for $5,500 and, to secure the note, gave a mortgage on land including the land in controversy. That on October 1, 1910, Hamilton borrowed $6,725 from Aston to take up the Russell note, and again gave a mortgage on the same land to secure the Aston loan. That, in 1911, Hamilton borrowed $7,000 from appellant, Kansas City Life Insurance Company, to pay off the Aston note, in each instance executing a new mortgage on the land to secure the new loan. It is evident that the indebtedness of Hamilton now held by the Kansas City Life Insurance Company, less the accrued interest, existed at the time of the gift, the same indebtedness being evidenced by different obligations held at different times by different creditors; while it is equally evident that the holding of the indebtedness by the appellee, the Kansas City Life Insurance Company, was not prior but was subsequent to the gift. Unless the appellants are prior creditors within the meaning of the statute, they are not in a position to question the validity of the gift on the ground that it is without consideration, or that Hamilton was insolvent at the time of the gift. It is evident that there is a difference in the attitude that Russell sustained toward the indebtedness of Hamilton at the time of the gift, and that sustained by Aston. Russell clearly was a prior creditor. If Russell had taken a renewal note for his then existing debt, under Gonzales v. Adoue et al., 94 Tex. 120, 58 S. W. 951, the original debt would still continue and would hold preference over the voluntary conveyance of Hamilton, if he was insolvent at the time of his gift. The most that can be said of Aston is that he was a subsequent holder or purchaser of a prior indebtedness. Aston was not a creditor in any sense, was not interested in the Hamilton matters, until he loaned his money on the Hamilton note and mortgage on the 1st of October, 1910. He was interested in the disposition made of the money to the extent of seeing that the Hamilton mortgage to Russell was satisfied, thereby making his the first mortgage. His loan in no wise referred to the Russell note or mortgage, expressed no agreement of subrogation of right that Russell had, and his loan was in no way in protection of any interest he had in any of Hamilton's affairs. When his note became due the same proceeding was had as to appellant, Kansas City Life Insurance Company, its money discharging the Aston note and mortgage and a new note and mortgage executed in its favor, the new note and mortgage in no wise referring to the Russell or Aston notes or mortgages, nor do they contain any agreement for subrogation of any right of either. Appellants, Kansas City Life Insurance Company, and its trustee, and those

adopting its pleading, alleged that its loan to Hamilton of $7,000 was for the purpose of and that it was used to take up the Aston note and mortgage lien, and that by reason thereof, and by reason of the agreement of the parties, appellant is subrogated to the rights of Russell and Aston. The facts stated in the pleadings as to the purpose and effect of the loan, to take up the preceding Hamilton note and mortgage, is clearly sustained both by the finding of the court and the evidence, but, in our opinion, not so as to the allegation of subrogation, and we are of the opinion, as appellants seem to be by their pleading, that before appellant, the Kansas City Life Insurance Company, has the right to set aside the gift, it must show that it is a prior creditor by reason of its having been subrogated to that right, by the attitude it sustains to the Russell note.

[3] The principal underlying subrogation is indemnity and no more. Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528. Neither the Aston loan nor the loan of appellants to Hamilton was made to protect any interest then held by the lender. There was not in either instance a substitution of one creditor for that of the other, to whose rights the subsequent creditor succeeded in relation to the former debt, and in neither case was the subsequent loan an act done in protecting an interest then held by the lender. In fact, there is nothing in either loan to Hamilton that suggests an equitable proceeding, but each subsequent lender or creditor, after the Russell loan, is a mere volunteer, a stranger, in the matter of the loan, and the doctrine of subrogation does not enter into the transaction, unless it be by reason of an agreement between the parties that it should, as pleaded by appellants. It has often been held that one, who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and canceling the mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee therein. 37 Cyc. 471; Rice v. Winters, 45 Neb. 517, 63 N. W. 830; Pollock v. Wright, 15 S. D. 134, 87 N. W. 584. Under such circumstances, if any subrogation takes place, it must be by reason of an agreement of the parties. Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273. But there is no finding nor a request for a finding as to whether there was such agreement, either express or implied. In the Fievel v. Zuber Case, supra, the court said:

"A party who has an interest in property, to be protected by discharging an incumbrance upon it, has the right to pay it and to substitute himself to the rights of the lienholder, whether either the creditor or debtor give his assent or not. But neither Brown nor Kaufman and Runge had such right. As long as the note remained undischarged in the hands of the * * * holder or his indorsers, they were strangers to the title. Brown, as mere trustee in the deed in trust, had the power to make a sale if the debt were not paid, but had no interest in the property to be protected by the discharge of the lien. If any subrogation took place, therefore, it must have been by agreement of parties. That this can be accomplished by a payment in accordance with an express understanding between the debtor, the creditor, and a third party, to the effect that if such third party pays the debt he may hold the security for his reimbursement there can be no doubt. Dillon v. Kauffman, 58 Tex. 696; Flanagan v. Cushman, 48 Tex. 241; it is also recognized law that a payment upon a like agreement between a stranger and the creditor will have the same effect. In both these cases, however, this would seem a virtual assignment without reference to the doctrine of subrogation."

[4-7] It seems to us that, appellee being a stranger, a mere volunteer to the debt, having no interest to be protected by the payment of the Aston note and a release of the mortgage securing that note, if Aston had such an agreement with Russell as to give him the right of subrogation, it would be necessary that appellant show that it had such agreement with Aston. We do not believe that the mere delivery to appellant, the insurance company, of the Aston note and mortgage, as found by the court, would be sufficient to show an express or implied agreement for the right of subrogation. It is an evidentiary fact only tending to show such agreement. The retention of the Russell and Aston notes and mortgages and their payment would be sufficient to give the right of subrogation if appellant, the insurance company, were not a mere volunteer. Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537. The burden is on appellee to show the fact of Hamilton's solvency at the time of the gift only in the event appellants are prior creditors. The record does not show that fact to have been established. Until the fact that appellants are prior creditors is shown, they would not be in a position to question her title. That they are prior creditors is purely defensive, and the burden is on appellants to show that fact. For the reason given, the first three assignments are overruled.

[8] Appellants' ninth and tenth assignments, complaining of error in permitting Mrs. Walker to testify as to transactions with and statements by Hamilton with her, in showing the alleged gift to her of the land, must be overruled, under San Antonio Light Publishing Company v. Moore, 46 Tex. Civ. App. 259, 101 S. W. 867.

Other assignments not specifically passed upon have been fully considered and are overruled, as they come within the principles discussed under the first three assignments.

We believe that the findings of fact so far as made by the jury and the court are well sustained by the evidence. We adopt their findings. Finding no reversible error, the case is affirmed.