CENTRAL NAT. BANK OF WACO v. BARCLAY et al. (No. 6604.)

(Court of Civil Appeals of Texas. Austin. May 16, 1923. Rehearing Denied June 13, 1923.)

1. Mortgages ⬤⟺32(1)—Conveyance by husband to wife held an absolute deed and not a mortgage; "secure."

Where a wife's separate lands stood pledged for moneys borrowed by the husband for his individual use, and he conveyed his lands to her by a deed reciting that it was made in consideration of the sum of "moneys borrowed * * * and the said [grantee] assuming and agreeing to pay off the notes * * * to secure which, in part, this conveyance is made to said [grantee] who assumes the payments as above set out," and containing the usual granting and habendum clauses but no defeasance clause, held, that the instrument was an

absolute deed and not a mortgage; the term "to secure" as used therein implying a purpose to obtain the grantee to pay the grantor's debts which were extinguished by the conveyance in so far as he and the grantee were concerned.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Secure.]

**2. Fraudulent conveyances ☞271(1)—Burden on creditor to prove existing debt at time of conveyance attacked.**

The burden is on a creditor attacking a conveyance in fraud of his debt, to prove that the debt was existing at the time of the conveyance, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3966, 3967.

**3. Limitation of actions ☞100(13)—Attack on recorded conveyance for fraud on creditors held barred by limitation.**

Where the execution relied on by defendants in trespass to try title and their answer attacking a conveyance as fraudulent, were issued and filed respectively more than four years after the recording of the conveyance, the right to question the conveyance was barred by the 4-year statute.

**4. Fraudulent conveyances ☞249—Creditor, held guilty of laches in attacking recorded deed.**

Where a creditor of a husband had constructive notice of a deed from the husband to his wife from the date of recordation, and no facts were pleaded to excuse lack of diligence in pursuing the property before the right to do so was barred in law, such creditor was guilty of laches and not entitled in equity to have the conveyance set aside for fraud.

Error from District Court, McLennan County; H. M. Richey, Judge.

Trespass to try title by M. K. Barclay and another against the Central National Bank of Waco and others. Judgment for plaintiffs, and defendant named brings error. Affirmed.

G. W. Barcus, of Waco, for plaintiff in error.

S. H. Clayton, of Waco, for defendants in error.

### Statement.

BLAIR, J. This is an appeal, perfected by a writ of error, by the Central National Bank of Waco, one of the defendants in the court below, from an adverse judgment rendered in favor of Mrs. M. K. Barclay, joined pro forma by her husband, W. A. Barclay, plaintiffs in the court below, in a suit in trespass to try title, to remove cloud and to permanently enjoin the Central National Bank of Waco, Crate Dalton, and Bob Buchanan, the latter as sheriff of McLennan county, Tex., from selling four certain lots and parcels of land, in the city of Waco, which had been levied upon by the said sheriff under and by virtue of an execution issued out of a case in which the said Cen-

tral National Bank had obtained judgment against W. A. Barclay, which judgment plaintiff in error had caused to be abstracted and placed of record in the abstract of judgment records, in said McLennan county; plaintiff in error claiming a judgment lien upon said property as the property of W. A. Barclay.

The defendant in error, Mrs. M. K. Barclay, claimed to own the said four lots levied on, in her own separate right, by reason of a conveyance to her by her husband, W. A. Barclay, of date November 25, 1914; hence her suit in trespass to try title, and in the alternative to remove cloud, if the abstract of judgment reflected any cloud upon said lots; and for injunction permanently enjoining the sale under the execution based upon such judgment; also pleading the 4 and 5 year statute of limitation against the claim of plaintiff in error.

The plaintiff in error bank and Crate Dalton, defendants below, filed answers denying that the property was the separate property of Mrs. M. K. Barclay, but alleged it to be either the separate property of W. A. Barclay, or the community property of the said W. A. Barclay, and his wife, Mrs. M. K. Barclay, and as such was subject to the judgment lien; and further that the instrument of conveyance was on its face a mortgage, and insufficient to pass title to the said Mrs. M. K. Barclay; and further that, if the instrument be construed to be a deed, which they denied, it was executed for the purpose of defrauding his creditors, especially the plaintiffs in error, since their debt was in existence at the time. There are other pleadings by both parties, but we do not deem any of them necessary to a decision in this case.

The case was tried before the court, a jury being waived, and the court rendered judgment for Mrs. M. K. Barclay, plaintiff below; vesting title to the said property in her, also removing cloud caused by the judgment lien and the execution based thereon, and permanently enjoining the defendants below from selling the property, and quieting title thereto in Mrs. M. K. Barclay.

There was no request filed for findings of fact and conclusions of law by either party, and none were made by the trial judge.

### Findings of Fact.

The proof showed: That W. A. Barclay was 72 years old, and his wife, Mrs. M. K. Barclay was 70 years old, at the time of the trial of this case. That they had been married 50 years. That at the time of their marriage neither had any property. That Mrs. M. K. Barclay, on January 8, 1894, and prior thereto, acquired title to some 2,800 acres of land in Falls county, Tex., commonly known as Barclay's ranch, by purchase, gift,

and inheritance in her own separate right. That thereafter at various intervals she, joined by her husband, W. A. Barclay, mortgaged this land until all but 200 acres was covered by mortgages, aggregating in renewal mortgages, in 1912, 1913, and 1914, to $95,000, practically all of which W. A. Barclay borrowed from her and used it in various enterprises in which Mrs. Barclay had no interest —such as $35,000 in an oil mill, $31,500 in a land deal at Bay City, $10,000 in a mining deal in Mexico, and other sums until his total debt to Mrs. Barclay, in November, 1914, was $105,000 borrowed money, for which her land was pledged. During all these years, Mrs. Barclay collected the rents from the lands in Falls county, paid the taxes and the interest on the money, for which her land was pledged, which amounted to about $35,000 or $40,000 during the period of the last seven years. That W. A. Barclay had paid her back, in all about $36,000, in cash, lands, and notes. That some time in September, October, or November, 1918, W. A. Barclay entered into a contract to trade his Matagorda county land for a jewelry store, at San Antonio. The trade for some reason fell through, but the San Antonio party placed on record the contract of sale, which caused trouble about the title in a later sale of the same property by W. A. Barclay to A. R. Roberts, of Waco. To clear this title, he agreed to pay Crate Dalton and one Lemond $750; which services they performed. Dalton testified that this was on November 14, 1914; Barclay testified that it was in December, 1914, or January, 1915. Two notes for $375 each were made to Dalton by Barclay, on the 8th day of April, 1915, in settlement of this claim. They were transferred by Dalton, one to plaintiff in error bank, with recourse on Dalton, and the other to Lemond, without recourse on Dalton. These notes are the basis of the judgment lien sought to be enforced in this case.

On November 25, 1914, W. A. Barclay conveyed the lots in question, along with other real estate, to Mrs. M. K. Barclay, by a general cash warranty deed, save and except a recitation in the consideration, which plaintiff in error contends constitutes it a mortgage or deed of trust on its face. By this conveyance, the land in controversy, as well as other lands, were conveyed by W. A. Barclay to his wife, M. K. Barclay, in consideration of the assumption by her of the payment of these notes against her land, which notes were in fact the debt of W. A. Barclay, and amounted to $95,000 at the time, besides some other debts owing by W. A. Barclay to her.

The testimony showed that W. A. Barclay had been disabled from work for about two years, on account of an injury, that he owed only one debt to a bank at the time of this conveyance other than the sums owing to his wife, and that he had no property. It was agreed that W. A. Barclay was the common source of title. The conveyance from Barclay to his wife was made on November 25, 1914. The deed was recorded in McLennan county, on November 26, 1914. Plaintiff in error's debt was created in December, 1914, or January, 1915. Mrs. M. K. Barclay paid the taxes before delinquency, in 1915, and subsequent years, on the property in question, and it stood on the record in her name during all this time. The notes constituting the basis of the judgment lien were executed by W. A. Barclay, April 8, 1915, the abstract of judgment was filed May 12, 1916, and the alias execution was issued December 8, 1920, in said cause, and levy was made thereunder on the lots in controversy, as the property of W. A. and M. K. Barclay. Notice of sale was dated December 9 by the sheriff, and the sale was to be January 4, 1921.

## Opinion.

As presented by the record, we are of the opinion that there are only three questions for our determination in this case. The first involves the construction of the instrument of conveyance from Barclay to wife, as to whether it is a deed or mortgage. The second is, If the instrument herein is construed a deed, was it executed for the purpose of defrauding the creditors of W. A. Barclay, as prohibited by article 3966, Revised Statutes? And third, Was the claim of fraud barred by the 4 and 5 year statute of limitation, and was plaintiff in error guilty of great laches in not asserting its claim sooner?

[1] Plaintiff in error contends by its first proposition that the instrument of date of November 25, 1914, from W. A. Barclay to his wife, Mrs. M. K. Barclay, was not a deed, but a mortgage, and as such does not place the title to said property in the said Mrs. M. K. Barclay as her separate estate. It further contends that a certain recital in the consideration makes the instrument on its face a mortgage. The recital is as follows:

"That I, W. A. Barclay, of the county of Bell, state of Texas, for and in consideration of the sum of the conveyance to a trustee, for the use and benefit of John Hancock Life Insurance Company, of Boston, Mass., by M. K. Barclay, of certain lands, same being of her separate property, and said conveyances being to secure moneys borrowed by the grantor herein, from said John Hancock Life Insurance Company, and the said M. K. Barclay assuming and agreeing to pay off, and fully discharge the several notes now held by said Life Insurance Company, as well as one certain note held by Detroit United Bank, of Detroit, Mich., said several notes, aggregating the principal sum of ninety-five thousand ($95,000) dollars, to secure which, in part, this conveyance is made, to said M. K. Barclay, who assumes the payments as above set out."

The testimony concerning the transaction is as follows:

W. A. Barclay, who prepared the deed, testified:

"The consideration, recited in the deed meant to show a valuable consideration for the property and was intended to convey a valid deed, that was the intention of the instrument and what it was supposed to do, to convey a warranty deed."

Mrs. Barclay testified:

"The four lots were conveyed to me by Mr. Barclay on November 25, 1914, in order to help me out on the promise he made me and give me those lots to help me out and in the same way on same date and for the same purpose he conveyed a part of the Heltzley survey in Falls county to protect me on the money he borrowed."

We do not think the trial court erred in concluding that the instrument was an absolute warranty deed, conveying the title in fee simple to Mrs. Barclay. The above-quoted recitation of the consideration in the deed is followed by the usual granting and habendum clauses, and the instrument is, in all things, a general cash warranty deed, except the clause, "to secure which, in part, this conveyance is made, to said M. K. Barclay, who assumes the payments as above set out"; said clause being, as stated, a part of the recitation of consideration for the conveyance.

This necessarily requires a finding as to what the term "to secure" means, as used in this instrument. Webster's dictionary defines the word "secure" to mean:

"To get possession of; to make one's self secure of; to acquire certainly, as to secure an estate."

Words & Phrases, vol. 7, p. 6383:

"The word 'secure' when used as a verb active, signifies to protect, insure, save, ascertain." Words & Phrases, Second Series, vol. 4, p. 497.

Construing the whole context, which we are required to do, and aiding the instrument to convey the greatest title which under the facts and circumstances it is capable of conveying, as is also the duty of the court, we must conclude that the instrument is a deed conveying absolute title from W. A. Barclay to Mrs. M. K. Barclay. The facts are undisputed that Mrs. M. K. Barclay's separate lands had been pledged to borrow money for the private and individual use of W. A. Barclay; that she by this conveyance agreed to assume and pay off all this debt, aggregating $95,000, and the consideration moving to her was the conveyance of the lots in controversy, as well as several other tracts of land described in the same instrument. Although the term "to secure," as used, is rather ambiguous, yet, in the light of all the facts, that W. A. Barclay was old, that he owed practically no one except his wife at the time of the conveyance, that he was an invalid and unable to work, besides the testimony of both parties that they intended it as a complete sale, we must construe the instrument to be a deed, whereby the grantee "got possession of" and "acquired certainly" such estate as the grantor had in the lands or lots so conveyed. In fact, there is no other conclusion that can reasonably be reached, since the instrument contained no defeasance clause; neither was the privilege or option granted the grantor to recover the property, upon his reimbursing the grantee in the payment of his debts. But, in so far as grantor and grantee were concerned, the debt was extinguished by the conveyance, and this fact alone constitutes a strong presumption that the instrument was a deed.

The term "to secure" could not imply a right of defeasance, since all the elements of a mortgage or deed of trust are lacking in the instrument of conveyance. To so construe it to imply such right of defeasance would in fact be repugnant to and nullify the granting and habendum clauses, which would destroy the rule requiring courts to confer the greatest estate on a grantee which the terms of the instrument will permit, as well as the rule which requires the courts to so reconcile repugnancies in the provisions of deeds so as to give effect to the manifest purpose of the grantor.

As affecting W. A. Barclay, in view of the whole context, the term "to secure which, in part, this conveyance is made to said M. K. Barclay, who assumes the payment of the above set out," we are of the opinion that the only reasonable interpretation of the language would be that the said W. A. Barclay was, in consideration of deeding certain lands, including the lots in controversy, to Mrs. M. K. Barclay, to obtain her, to secure her or to get her to pay certain debts owing by him to a third person, for which her separate property stood pledged, in the event of his failure to pay the same. We think that the language used shows clearly that it was the purpose of W. A. Barclay to secure M. K. Barclay to pay his debts for a certain definite consideration—that is, the conveyance of the lands to her—rather than to secure her in the event she had to pay the debts which she directly assumed. In other words, What is it that W. A. Barclay is trying to secure? The answer is, to secure or to get some one who will pay his debts, or assume the payment thereof. Whom has he obtained or secured to do this? Mrs. M. K. Barclay, who, "in part," is paid by this conveyance to assume the payment and discharge said debts. The assignment is not sustained. Adams v. Bateman (Tex. Civ. App.) 29 S. W. 1124; Callahan v. Houston, 78 Tex. 494, 14 S. W. 1027; Calhoun v. Lumpkin, 60 Tex. 188; Cravens v. White, 73 Tex. 579, 11 S. W. 543, 15 Am. St. Rep. 803; Welch v. Harvey, 281 Mo. 684, 219 S. W. 899; 27 Corp. Jur. pp. 533, 534, §§ 222, 223.

[2] The second question presented for our

determination is whether or not the conveyance in question is fraudulent in law.

The proof as to whether the debt of plaintiff in error was in existence at the time, of the conveyance of the lots in question was conflicting. W. A. Barclay testified that, it was not. Crate Dalton testified that it was. There being no specific findings of fact, we must presume that the trial judge found that such debt was not in existence at the time in support of his judgment. The burden is upon a creditor attacking a conveyance in fraud of his debt, to prove that his debt was existing at the time of the alleged fraudulent conveyance. The court having found by presumption of law, on our part, that the debt was not in existence at the time of the conveyance herein attacked, we overrule the assignment. Articles 3966, 3967, Vernon's Sayles' Ann. Civ. St. 1914, and Vernon's Ann. Civ. St. Supp. 1918 and 1922, and cases cited; Allen v. Crutcher (Tex. Civ. App.) 216 S. W. 236; Broussard v. Lawson, 58 Tex. Civ. App. 415, 124 S. W. 712; Bank v. Walker (Tex. Civ. App.) 187 S. W. 724; Diltz v. Dodson (Tex. Civ. App.) 207 S. W. 360; David v. State Bank (Tex. Civ. App.) 238 S. W. 979; Fenton v. Miller (Tex. Civ. App.) 218 S. W. 14; Hugo v. Hirsch (Tex. Civ. App.) 63 S. W. 163; 27 Corp. Jur. p. 562, § 267; Lemm v. Miller (Tex. Civ. App.) 245 S. W. 90; Lewis v. Simon, 72 Tex. 474, 10 S. W. 554; Lynn v. LeGierse, 48 Tex. 140; McCrory v. Lutz, 64 S. W. 780;[1] Martin v. Jourdanton (Tex. Civ. App.) 185 S. W. 583; Moore v. Belt (Tex. Civ. App.) 206 S. W. 225; McLane v. Bank (Tex. Civ. App.) 68 S. W. 66; Torrey v. Cameron, 73 Tex. 590, 11 S. W. 840; Vodrie v. Tynan (Tex. Civ. App.) 57 S. W. 680; 27 Corp. Jur. p. 641; 27 Corp. Jur. 555, § 258.

[3] We are also of the opinion that plaintiff is barred in its action to set aside the conveyance herein based upon fraud. In this case the pluries execution under which the levy was made on the lots in controversy was issued by direction of plaintiff in error, on December 8, 1920. The sale enjoined thereunder by defendants in error was to have been made January 4, 1921. The plaintiff in error seeks to enforce the sale because of the alleged void fraudulent conveyance of the lots by W. A. Barclay to his wife, Mrs. M. K. Barclay, by deed of date November 25, 1914, which was recorded November 27, 1914. The issuance of the writ of execution and the answer of the plaintiff in error, setting up the plea of a fraudulent conveyance, were issued and filed respectively more than four years after the recording of the deed of conveyance from W. A. Barclay to his wife, Mrs. M. K. Barclay, and are there-

[1] Reported in full in the Southwestern Reporter; reported as a memorandum decision, without opinion in 94 Tex. 650.

fore barred under the 4-year statute of limitation.

[4] We are also of the opinion that plaintiff in error is guilty of laches and not entitled in equity to have the conveyance in question set aside, because of the alleged fraud, since it had constructive notice of the conveyance from the date of recordation, November 27, 1914, of the deed, and no facts are pleaded to excuse its lack of diligence in pursuing the property before the right to do so was barred in law. Vodrie v. Tynan (Tex. Civ. App.) 57 S. W. 680; Calhoun v. Burton, 64 Tex. 510; Diltz v. Dodson (Tex. Civ. App.) 207 S. W. 360; Lemm v. Miller (Tex. Civ. App.) 245 S. W. 90.

We are of the opinion that there is no error in the judgment, and it is therefore affirmed.

Affirmed.