HOUSTON OIL CO. et al. v. BISKAMP et al.

No. 2972.

Court of Civil Appeals of Texas.
Beaumont.

Nov. 28, 1936.

Rehearing Denied Dec. 2, 1936.

Williams, Lee, Sears & Kennerly, and W. W. Moore, Jr., all of Houston, Forse & Forse, of Newton, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellants.

A. M. Huffman, of Beaumont, for appellees.

WALKER, Chief Justice.

On the 5th day of May, 1891, Roberta Jones, Ida Chapman, Elias Biskamp, and Kirby Biskamp owned jointly in fee simple a certain tract of land containing 262 acres, a part of the James West headright survey in Newton county. On that date Roberta Jones, joined by her husband, R. J. Jones, Ida Chapman, joined by her husband, William Chapman, and Elias Biskamp joined in executing to H. J. Lutcher and G. B. Moore a general warranty deed to the 262 acres of land, described above. Kirby Biskamp's name was also signed to this deed. Kirby Biskamp was born in 1866 and died in 1918. In 1912 he was adjudged a lunatic.

On February 15, 1934, this suit was instituted in the form of trespass to try title by certain of Kirby Biskamp's heirs against Houston Oil Company, Southwestern Settlement & Development Company, and Republic Production Company, who held

by a regular chain of transfers the title of Lutcher and Moore, to recover the interest of Kirby Biskamp in the 262 acres of land in controversy.

The plaintiffs attacked the deed of date May 5, 1891, in so far as it purported to convey the interest of Kirby Biskamp, and only to that extent, by an affidavit of forgery and by allegations that at the time the deed was executed Kirby Biskamp was insane; that he was mentally incompetent to execute the deed and therefore the deed bearing his name did not convey his title. They also pleaded the several statutes of limitation. The defendants answered by pleas of general and special demurrer, general denial, and the statute of four years' limitation (Vernon's Ann.Civ.St. art. 5529). On trial to the court without a jury, judgment was rendered in favor of the plaintiffs sustaining their attack on the deed in issue, and awarding them an undivided interest in 46.44 acres of the 262 acres; that being the exact acreage represented by the claims of the successful plaintiffs.

The following testimony was offered by plaintiffs in support of their pleas of insanity and forgery:

Judge W. E. Gray testified (questions and answers reduced to narrative):

"I am W. E. Gray. I live here in Newton. I have lived in the town of Newton practically all my life; in and near Newton. I have held the official position of County Judge here for six years. I was born in the town of Newton.

" * * * I knew Kirby Biskamp. I first got acquainted with him in 1880. At that time they lived a mile and a half from our place, on the James West Survey. I don't know how old Kirby Biskamp was at that time; he was such a peculiarly shaped boy I couldn't hardly tell; twelve or fourteen is my best judgment. I saw him regularly twelve or fourteen years after that; long up until the early nineties. I was off to school in Louisiana, and my mother lived on the J. M. Fuller Survey until about the year 1900 or 1902 and her husband died there, and I don't remember going back there often since. During that time for the first four or five years I saw him I expect once a month; I could say all the time. I didn't go to school with him. I don't remember ever seeing him go to school. I went to school all the time, practically every year, and taught at that place.

" * * * I know Kirby Biskamp couldn't read and write. He wasn't a normal boy; first, he had what I called a simlin head, and then his upper teeth protruded; he was almost a monstrosity in looks. He couldn't talk at all; he never had sense enough to talk in any way, shape or form, except jabber a little. I attempted to talk to Kirby; he was not able to carry on a connected conversation. He could not tell the time of day by a watch or clock. He never done any work. Most of the time he was right at his mother's heels. She always watched him very close, but as he grew up a bit larger, I don't know, this is hearsay, he had a little bunch of bulls and with a truck wagon, and claimed he was after pine. I saw him on those occasions. I saw him fooling around the woods; apparently hunting for pineknots and couldn't find them. There were lots of them there but he never did find any. From my observation and the things I saw with reference to Kirby Biskamp during those twelve or fourteen years from 1880 until I moved away from there and the experience I had with him I would say he had no mind at all. After that time I saw Kirby maybe once a year or two years. He continued about the same. I couldn't say what was the last time I saw him, I never charged my mind with it. I am sure I saw him once a month up to 1900 and 1901."

Elias Biskamp, one of the parties to the deed, called as a witness by plaintiffs, on being shown the deed, testified:

"Q. You were present, Elias, when this deed was signed? A. Yes sir.

"Q. This is a deed signed by those parties whose names you have read, to H. J. Lutcher and G. B. Moore, conveying 262 acres of land out of the James West Survey, dated at Bleakwood, Texas, the 5th day of May, 1891. You remember the incident of this deed having been executed? A. Yes sir.

"Q. Where were you at that time? A. We were at the old home place on White Oak Creek.

"Q. Was Mr. and Mrs. Jones there? A. Yes sir.

"Q. Was Mr. and Mrs. Chapman there? A. Yes sir, they were all there and signed.

"Q. Was Kirby there? A. Yes sir.

"Q. Who, if anyone, brought the deed there to be executed? A. L. B. Clark made the deed out, and asked me if I could sign for Kirby, and knew it was no account when I done it.

"Q. You mean you told Mr. Clark that? A. No, but if he was satisfied, it suited me.

"Q. What did you tell him when he asked you if you would sign Kirby's name to the deed? A. I told him I would and could sign it, and did do it.

"Q. Was Kirby present at the time? A. Yes sir.

"Q. Why didn't Kirby sign the deed? A. He couldn't do it, that is why.

"Q. Did Kirby acknowledge the deed? A. Well, he knowed what we was doing.

"Q. He knew that you were selling the place? A. We told him we was selling it.

"Q. Do you know whether he had mind enough to know what it was all about? A. I don't know. He never made any complaint.

"Q. He never made any objection? A. No sir."

R. J. Jones, a party to the deed, called as a witness by defendants, testified:

"Q. Mr. Jones, at the time that the deed was made to Mr. Clark, which deed you saw just a few moments ago, Mrs. Ida Chapman and her husband, Mrs. Roberta Jones and you, and Kirby Biskamp and Elias Biskamp were all present with Mr. Clark at the time the deed was signed and acknowledged? A. Yes sir.

"Q. And at the time the money was paid? A. Yes sir.

"Q. You were all there together? A. Yes sir.

"Q. You and your wife, and Mr. and Mrs. Chapman, and Lyle Biskamp, you were all there at the time and saw the deed signed and knew all about it? A. Yes sir.

"Cross Examination

"Q. Did you all meet at the old Biskamp place especially for that purpose? A. Yes sir.

"Q. At whose request? A. Well, at Mr. Clark's, I reckon. The land had been cut off and divided up. We met there for that purpose at Mr. Clark's request.

"Q. Where were you, inside the house, or outside on the porch, at the time? A. I believe it was in one of the rooms, at a little table, the best I remember.

"Q. Who assumed to take charge of the meeting, and get the deed signed? A. Mr. Clark.

"Q. Do you know if anyone prepared the deed there, or was it prepared before you all met? A. I think he brought the deed there with him.

"Q. He brought it with him? A. Yes sir.

"Q. What was Kirby Biskamp doing there around the house at that time, during the meeting? A. He would just get some place and stand by himself and look, or set down some place.

"Q. Did he take any part in the conversation? A. He didn't talk to you at all hardly, about anything."

On motion of defendants, the lower court filed the following fact conclusions, which are in no way attacked on this appeal:

"1. I find that on May 5, 1891, Roberta Jones, Elias Biskamp, Kirby Biskamp and Ida Chapman were the owners of the 262 acres of land described in plaintiff's petition and sued for herein.

"2. That on the 5th day of May, 1891, a deed was executed by Roberta Jones and husband, R. J. Jones, Elias Biskamp, Ida Chapman and husband, Wm. E. Chapman to Henry J. Lutcher and G. B. Moore describing and purporting to convey the 262 acres of land described in plaintiff's petition and that this deed also contains the name and acknowledgment of Kirby Biskamp.

"3. That defendants have a regular chain of title vesting in them such title as was conveyed by the deed dated May 5, 1891, from Roberta Jones, Elias Biskamp, Kirby Biskamp and Ida Chapman to Henry J. Lutcher and G. B. Moore.

"4. That the plaintiffs are heirs of Kirby Biskamp deceased.

"5. That during all of his lifetime the said Kirby Biskamp was a person of unsound mind and incapable of transacting business, and that on the 5th day of May, 1891, he was incompetent to execute the deed to Henry J. Lutcher and G. B. Moore conveying the land in controversy.

"6. That in the execution of said deed the said Kirby Biskamp did not sign or acknowledge said deed but that same was executed by his brother, Elias Biskamp, at the request of L. B. Clark, Agent for the grantees."

Appellants, defendants below, base their appeal upon the fact conclusion that the deed in issue was the voluntary act of Kirby Biskamp and that its only vice was his want of mental capacity to execute it. On that conclusion they advance the following legal propositions:

"Where Elias Biskamp signed the name of Kirby Biskamp to a deed and at the time of such signature, Kirby Biskamp was over the age of twenty-one years, and was present when the deed was signed and knew what was being done and offered no objection thereto, then the fact that Kirby Biskamp at such time was mentally incompetent renders the deed merely voidable and not void, and, therefore, it was error for the trial court to hold that the deed was absolutely void."

"Where the basis of plaintiffs' suit in this case is the cancellation of a deed executed in 1891 in so far as Kirby Biskamp, one of the grantors therein, was concerned, and the undisputed evidence established that such party died in 1918, and that no suit was instituted until 1934, the suit is covered by the four year statute of limitation, and upon such statute being pleaded by the defendants, it was incumbent upon the plaintiffs to allege and prove facts and show grounds to excuse the delay in filing the suit until after the lapse of the four year period from 1918, and in the absence of such pleading and proof, it was error for the trial court to cancel such deed."

"Where the cause of action of plaintiffs in this case for the cancellation of the deed of Kirby Biskamp accrued upon his death in 1918, said parties are barred by the doctrine of laches to assert said cause of action after waiting for a period of approximately sixteen years after 1918, where the deed which they sought to set aside was of record long prior to 1918, and they, therefore, had constructive knowledge thereof and pleaded no facts as an excuse for their lack of diligence in bringing this suit, and it was error for the trial court to render judgment for the plaintiffs in the absence of such pleadings and proof of a proper excuse for such lack of diligence."

In support of these propositions, appellants cite the following authorities: Article 5529, Rev.Civ.Stat. of Texas, 1925; Central National Bank of Waco v. Barclay (Tex. Civ.App.) 254 S.W. 140; Eckert v. Wendel, 120 Tex. 618, 40 S.W.(2d) 796, 76 A. L.R. 855; First National Bank of Navasota v. McGinty, 29 Tex.Civ.App. 539, 69 S.W. 495; Gulf Production Co. v. Palmer (Tex. Civ.App.) 230 S.W. 1017; Mounger v. Daugherty (Tex.Civ.App.) 138 S.W. 1070; Neal v. Holt (Tex.Civ.App.) 69 S.W.(2d) 603; Owen v. Free (Tex.Civ.App.) 85 S. W.(2d) 1090; Rutherford v. Carr (Tex. Civ.App.) 84 S.W. 659; 7 Tex.Juris. p. 952; Williams v. Sapieha, 94 Tex. 430, 61 S.W. 115; 28 Tex.Jur. p. 294.

■ If the testimony supports appellants' fact conclusion, the authorities cited would support their legal propositions. Thus, it is the settled law of this state that a deed in writing executed by a lunatic, purporting to convey his interest in land, is merely voidable and not void; that a power of attorney by a lunatic authorizing his attorney in fact to convey his interest in land is merely voidable and not void; that a deed in writing executed by a congenital idiot purporting to convey his interest in land is construed by the same rule of law governing the acts and deeds of mental incompetents generally. Williams v. Sapieha, 94 Tex. 430, 61 S.W. 115, is directly in point on these propositions. It is also the settled law of this state that one may verbally authorize a party to sign his name to a deed to land and that "the person actually writing the name is regarded not as an agent but as a mere instrument or amanuensis," Mondragon v. Mondragon, 113 Tex. 404, 257 S.W. 215, 216; nor is it necessary that the grantor be present when his name is signed to the deed, nor that he even authorize its execution, for it is well settled that by his acknowledgment before the officer he adopts and makes his own every word, including his own name, then upon the instrument. Chas. S. Newton et al. v. Emerson Talcott & Co. et al., 66 Tex. 142, 18 S.W. 348. It is also the law of this state, as appellants insist, that the deed of a lunatic in writing is within the provisions of the four-year statute of limitation; therefore, if appellants were correct in their fact conclusion, the court should have entered judgment in their favor for the land in controversy under their plea of the four-year statute of limitation. Rutherford v. Carr (Tex.Civ.App.) 84 S.W. 659; Eckert v. Wendel, 120 Tex 618, 40 S.W.(2d) 796, 76 A.L.R. 855; Central Nat. Bank of Waco v. Barclay (Tex.Civ. App.) 254 S.W. 140; Gulf Production Co. v. Palmer (Tex.Civ.App.) 230 S.W. 1017; 7 Tex.Juris. 952.

■ We have brought forward appellants' propositions of law and discussed and quoted from their authorities to make clear the point that we overrule their propositions, not because we deny their abstract soundness, but because we differ from them on their construction of the facts. The testimony does not support

their conclusion as a matter of law that the deed in issue was a voluntary act of Kirby Biskamp, and that its only vice was his want of mental capacity to execute it. As against appellants' conclusion, first, we adopt the trial court's fifth and sixth conclusions of fact, which read as follows:

"5. That during all of his lifetime the said Kirby Biskamp was a person of unsound mind and incapable of transacting business, and that on the 5th day of May, 1891, he was incompetent to execute the deed to Henry J. Lutcher and G. B. Moore conveying the land in controversy.

"6. That in the execution of said deed the said Kirby Biskamp did not sign or acknowledge said deed but that same was executed by his brother, Elias Biskamp, at the request of L. B. Clark, Agent for the grantees."

Second, Kirby Biskamp received no part of the purchase money of the land. He was not asked to sign the deed, nor was he told that his brother Elias was signing the deed for him. He did not know that his signature was necessary to the deed and did not know that his signature was attached to the deed. He did not consent for any one to sign his name to the deed. He was given no opportunity to consent or object to the act of his brother in signing his name to the deed. Third, Elias Biskamp signed Kirby Biskamp's name to the deed only because he was requested to do so by L. B. Clark, the agent of the grantees; in making this request it was not the intention of Clark to have Kirby Biskamp join in the execution of the deed as the act of Kirby Biskamp. Fourth, Kirby Biskamp was not mentally competent to make himself a party to any sort of transaction, which fact was known to Clark and the brother and sisters of Kirby Biskamp.

■■ This case was tried to the court without a jury, and judgment was rendered in favor of appellees for the land in controversy. Therefore every inference of fact supported by the statement of facts must be drawn in support of the trial court's judgment. The testimony, as we construe it, clearly supports the foregoing fact conclusions. It follows from our construction of the testimony that Kirby Biskamp was not a party to the deed in issue; that the act of his brother in signing his name to the deed was in law a forgery; and that the deed, being a forgery, was absolutely void from the date of its execution. A forged deed is not within the four-year statute of limitation.

■■ We sustain appellants' fourth proposition reading as follows: "Where Roberta Jones, a married woman, joined in a deed in 1891 to convey a tract of land in which she owned an interest, and was present when the name Kirby Biskamp, her brother, was signed to the deed by Elias Biskamp, which deed was signed in the presence of Kirby Biskamp and after the same had been explained to him and he made no objection thereto, and Roberta Jones accepted money for such deed and warranted that the deed conveyed good title and did not object or protest that the deed did not convey the interest of Kirby Biskamp because he was in her opinion incompetent, although of legal age, she is thereafter equitably estopped to change her position and assert that she did not mean her warranty and did not mean the covenant which she signed that the deed conveyed good title, and she is equitably estopped 43 years later to assert that such deed failed to convey the interest of Kirby Biskamp on the ground that he was mentally incompetent at the time the deed was executed, and it was error for the trial court to render a judgment allowing her to recover a proportionate part of the interest of Kirby Biskamp in the land which he purported to convey by the deed in 1891."

The record supports the facts summarized by this proposition. In joining in the execution of this deed, Mrs. Jones represented and warranted that Kirby Biskamp was a party thereto, and that the deed passed his title. By joining in the execution of the deed, she received her interest in the consideration; it may be presumed that the grantors would not have purchased the land had they known that Kirby Biskamp was not a party to the execution of the deed. Her conduct amounted to an intentional affirmative act which operated as a legal fraud against the grantees, thereby invoking against her the rule "that fraud will estop a married woman" announced by the Commission of Appeals in Guaranty Bond State Bank v. Kelley, 13 S.W.(2d) 69. See, also, Powell v. First Nat. Bank of Harlingen (Tex. Civ.App.) 75 S.W.(2d) 471; Green v. Hulse, 57 Colo. 238, 142 P. 416; Texas Creosoting Co. v. Hartburg Lumber Co.

(Tex.Com.App.) 16 S.W.(2d) 255, 256; Birge-Forbes Co. v. Wolcott (Tex.Civ. App.) 176 S.W. 605. Mrs. Jones' interest in recovery was 10.08 acres of land; to that extent the judgment of the lower court is reversed and judgment here rendered in favor of appellants. As to the balance of the 46.44 acres of land, the judgment is affirmed in favor of the other appellees.

Reformed and affirmed.